**UNITED STATES of America, Plaintiff,**

v.

**SMUGGLER–DURANT MINING CORPORATION, et al.,
Defendants.**

No. 89–C–1802.

United States District Court,
D. Colorado.

June 8, 1993.

John Moscato, U.S. Dept. of Justice, Denver, CO, for plaintiff.

Edward Mulhall, Glenwood Springs, CO, for defendants.

MEMORANDUM OPINION AND·ORDER

·CARRIGAN, District Judge.

Plaintiff, the United States, commenced this action pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), against the defendants seeking recovery of response costs incurred as a result of the release and threatened release of hazardous substances at the Smuggler Mountain Site (the Site). The government also seeks a declaratory judgment, pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), for recovery of future response costs at the Site.[1] Currently pending is the government's motion to strike certain of defendant Pitkin County's affirmative defenses.

The issues have been fully briefed and oral argument would not materially assist the decision process. Jurisdiction exists under 42 U.S.C. § 9613(b), and 28 U.S.C. § 1391.

### A. Factual Background.

The Site is located in Pitkin County, Colorado, in and around the town of Aspen. Mining operations conducted on Smuggler Mountain in the 1800's and 1900's resulted in mining dumps, mill tailings and other wastes being deposited throughout the 110 acre Site.

The government alleges that lead and cadmium, both hazardous substances, exist in high concentrations at the Site. Beginning in the 1970's, portions· of the Site were developed for residential use. ·Although homes now exist; over the majority of the Site, the Smuggler Mine remains in operation.

The government, as plaintiff, alleges that in 1983, Pitkin County·(the County) acquired property at the Site that contained hazardous substances. That property is known as Mollie Gibson Park. Plaintiff .further asserts that after the County acquired the Park, Centennial–Aspen disposed of soil containing hazardous substances there with the County's permission. Finally, the government alleges that the County may have removed from the Park dumps and tailings that contained hazardous substances and deposited them elsewhere, both on and off the Site, as foundation material for roads.

### B. Motion to Strike Pursuant to Fed.R.Civ.P. 12(f).

Plaintiff moves to strike certain of the County's affirmative defenses as legally insufficient.

Rule 12(f), Fed.R.Civ.P., provides, in pertinent part, that "upon motion·by a party . . . the court may order stricken from the pleading any insufficient defense. . . ." "An affirmative defense is insufficient if, as a matter of law, the defense cannot succeed under any circumstance." F.D.I.C. v. Isham, 782 F.Supp. 524,·530 (D.Colo.1992). The purpose of Rule ·12(f) is to save the ;time and money that would be spent litigating issues that will not affect the .outcome of the case. .See e.g., United States v. Kramer, 757 F.Supp. .397, 410 (D.N.J.1991). . Although motions to strike are disfavored, they may be granted within the sound discretion of the district court. Isham, 782 F.Supp. at 530.

#### 1. First and Eighteenth Defenses.

The County's first defense is that the complaint fails to state a claim for relief because it generalizes about the release and response costs at the Site rather than specifying each defendant's individual role. The

---

1. The instant action has been consolidated with Colorado v. Maxxam, Inc., et al., 92–C–620, brought by the State of Colorado seeking recovery of its ·response costs incurred and to be incurred at the Site.· Pitkin County is not a defendant in that action. ·

eighteenth defense is that the government's claims are frivolous and groundless. The government contends that both defenses have no basis.

The complaint alleges that there was a release or threatened release of hazardous substances at the Site which caused the United States to incur response costs, and that the County owns part of the facility at the present time, and owned a portion of the facility at the time of disposal of the hazardous substances.

The government has stated a claim under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a). *See United States v. Aceto Agr. Chemicals Corp.*, 872 F.2d 1373, 1379 (8th Cir.1989). Here, it is appropriate to strike the County's first and eighteenth defenses. *See United States v. Marisol, Inc.*, 725 F.Supp. 833, 836–37 (M.D.Pa.1989).

### 2. Second Defense.

■ The County's second defense is that this court is without jurisdiction over the instant action because the inclusion of the Site on the National Priorities List (NPL) was arbitrary and capricious.

The government argues that this defense should be stricken because this court has jurisdiction over the Section 107 cost recovery action, but only the Court of Appeals for the District of Columbia may hear challenges to the inclusion of a site on the NPL, and then only when the challenge is brought within ninety days of the date upon which the challenged regulation was promulgated. *See* Section 113 of CERCLA, 42 U.S.C. § 9613. In its response the County concedes that this court has jurisdiction over the instant action. Accordingly, the County's second affirmative defense is legally insufficient, and therefore it will be stricken.

### 3. Equitable Defenses.

■ Plaintiff contends that the County's equitable defenses of: (1) laches and statutes of limitation (third defense); (2) doctrine of unclean hands (thirteenth defense); (3) failure to mitigate damages (fifteenth defense); (4) estoppel, waiver, consent and release (sixteenth defense); and (5) equity (seventeenth defense) are barred because equitable defenses are not available under CERCLA.

Under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), present site owners and operators, owners and operators at the time of disposal, and generators and transporters of hazardous substances are liable parties, subject only to the defenses set forth in Section 107(b). Section 107(b) provides, in pertinent part, that there shall be no liability if the release was caused solely by: (1) an act of God; (2) an act of war; or (3) acts or omissions of third parties other than the defendants' employees or agents or other persons whose causal acts or omissions occur in connection with a contractual relationship with the defendants.

The courts are split concerning whether the defenses listed in Section 107(b) are exclusive. *Compare, Aceto*, 872 F.2d at 1378 (only statutorily-prescribed defenses available.); *with United States v. Conservation Chemical Co.*, 619 F.Supp. 162, 204 (W.D.Mo. 1985) (equitable defenses available against § 107 claims). This court, however, has held that the available defenses are strictly and exclusively defined by CERCLA. *State of Colo. v. Idarado Mining Co.*, 707 F.Supp. 1227, 1232 (D.Colo.1989), *rev'd on other grounds*, 916 F.2d 1486 (10th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1584, 113 L.Ed.2d 648 (1991) (defenses of laches, estoppel, failure to mitigate damages and the State's encouragement of mining held not available under the statute). The County has failed to convince this court to deviate from *Idarado* and the overwhelming majority of other decisions that have held that liability under Section 107(a) is subject only to the three limited defenses listed in Section 107(b). Therefore, the third, twelfth, thirteenth, fifteenth, sixteenth, and seventeenth defenses asserted by the County must be stricken as legally insufficient.

### 4. Fourth and Fifth Defenses.

■ The government asserts that the County's fourth defense of failure to join indispensable parties, and its fifth defense that the government's claims are barred because any releases were *de minimis* are insufficient defenses to CERCLA liability and must be stricken.

The County has not responded to the government's arguments regarding the fourth and fifth defenses. As explained above, the defenses listed in Section 107(b) of CERCLA are exclusive. Accordingly, the County's fourth and fifth defenses will be stricken.

### 5. Sixth and Seventh Defenses.

■ The government also moves to strike the County's sixth and seventh defenses. The County's sixth defense alleges that hazardous substances were released on its property solely as a result of acts of God or by the acts or omissions of third parties over whom the County had no control. The seventh defense also alleges that hazardous substances were released as a result of the acts or omissions of third parties.

The United States recognizes in footnote 39 of its brief that the sixth defense presents mixed questions of law and fact.[2] The seventh defense also presents mixed questions of law and fact. As a result, neither defense is subject to a motion to strike.

### 6. Eighth Defense.

■ The County's eighth defense asserts that the costs incurred by the United States were unnecessary and inconsistent with the national contingency plan (NCP). That defense further states that the declaratory judgment claim is barred because a determination cannot be made that any future costs are necessary and consistent with the NCP until such costs have been incurred. Finally, in its eighth defense the County states that the government has failed to provide an accounting of response costs.

Section 107(a) of CERCLA provides that a defendant is liable for "all costs of removal or remedial actions incurred by the United States Government or a State ... not inconsistent with the national contingency plan." 42 U.S.C. § 9607(a).

■ The United States concedes that the defense that the United States' response costs are inconsistent with the national contingency plan is an allowable defense to recoverability of particular costs under CERCLA. However, the contentions that the government's costs were not "cost-effective or prudent," or that they were "unreasonable" do not state appropriate challenges to the government's response costs. See *United States v. Kramer*, 757 F.Supp. 397, 436 (D.N.J.1991).

■ Moreover, the County can be declared liable for future response costs that are consistent with the national contingency plan. CERCLA § 113(g)(2), 42 U.S.C. § 9613(g)(2); *Marisol*, 725 F.Supp. at 845. Therefore, although the government cannot actually recover costs not yet incurred, the County may become liable for such future costs so long as they are consistent with the NCP. Finally, the absence of an accounting is not a defense to liability under CERCLA. See § B.3. above.

Thus, the eighth defense will be stricken except to the extent it alleges that the government's past and future response costs are not consistent with the NCP and therefore not recoverable under CERCLA.

### 7. Ninth Defense.

The County's ninth defense states that it is not liable for any response costs because the remediation plan adopted provides that the property owned by the County will not be remediated, but rather will be used as a repository for contaminated soil excavated from property at the Site owned by persons other than the County. The County asserts that equity and applicable law preclude a finding of liability on the part of the County because performance of the remediation plan will exacerbate any existing contamination at the Site, and precipitate the release of hazardous substances from property owned by the County. The County somehow interprets this defense to mean that "the Site was arbitrarily placed on the NPL." Response Brief at 18. The government contends that this defense is actually an assertion that the EPA's remedial plan is inconsistent with the NCP.

After reviewing the answer and the parties' briefs on this issue, the court is unclear

---

**2.** The United States further requests that the court view the motion to strike this defense as a motion for partial summary judgment pursuant to Fed.R.Civ.P. 56, and allow supplemental briefing. That request is denied.

exactly what the County is asserting in its ninth defense. Therefore, within eleven days of this order's date the parties shall provide further briefing regarding whether the ninth defense should be stricken.

8. *Tenth, Eleventh and Twelfth Defenses.*

The County's tenth, eleventh and twelfth defenses deal with the appropriateness of joint and several liability among the defendants in the instant action. The government concedes that it is not seeking joint and several liability against the County. As a result, the motion to strike the tenth, eleventh and twelfth defenses will be granted.

9. *Fourteenth and Nineteenth Defenses.*

 As its fourteenth defense the County asserts that the remediation plan will result in an unlawful taking of the County's property. In its nineteenth defense the County contends that it is entitled to a set-off for the acts of the government which allegedly will damage the County's property. The County asserts that as a matter of recoupment, it should be able to establish the government's liability for damages which would reduce or eliminate any response costs for which the County may be liable.

As explained above, the defenses set forth in § 107(b) of CERCLA are the exclusive defenses to liability. Moreover, to the extent the County is entitled to recoupment, it appears that the proper form of such a claim would be to file a counterclaim or an independent action, rather than asserting recoupment as an affirmative defense. *See United States v. Hardage,* 750 F.Supp. 1460, 1511 (W.D.Okla.1990). Accordingly, the motion to strike the fourteenth and nineteenth defenses will be granted.

10. *Twentieth Defense.*

 The County's twentieth defense seeks to incorporate the affirmative defenses raised by all other defendants in the action. Rule 8(c) requires a defendant to set forth affirmative defenses in its answer. In the event the County wishes to allege additional affirmative defenses raised by the other defendants, it must seek leave to do so pursuant to Fed.R.Civ.P. 15. Therefore, the County's twentieth defense will be stricken.

Accordingly, IT IS ORDERED that:

(1) Plaintiff's motion to strike is granted in part and denied in part;

(2) The first, second, third, fourth, fifth, tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, seventeenth, eighteenth, nineteenth and twentieth defenses are stricken;

(3) The motion to strike is denied as to the sixth and seventh defenses;

(4) The motion to strike the eighth defense is granted except to the extent it alleges that the government's past and future response costs are inconsistent with the NCP;

(5) Within eleven days of this order's date the parties shall provide further briefing regarding whether the ninth defense should be stricken, and within eleven days after filing of an order deciding the issues involved in the ninth defense, the defendant County shall file an amended answer consistent with this order and the order regarding the ninth defense; and

(6) The parties and their counsel are ordered to meet and confer within eleven days of this order in a good faith attempt to settle the case without further litigation, expense or delay. The parties shall report to this court in writing within fifteen days of this order, stating the results of their settlement negotiations and whether a conference before a Magistrate Judge or the Special Masters, some other alternative dispute resolution proceeding, would facilitate settlement.