**UNITED STATES of America, Plaintiff,**

v.

**AMERICAN COLOR AND CHEMICAL CORPORATION, Pfister Chemical, Inc. and Beazer East, Inc., Defendants.**

No. 4:CV–92–1352.

United States District Court, M.D. Pennsylvania.

June 2, 1994.

Timothy Burns, Trial Atty., Environmental Defense Section, Environmental & Natural Resources Div., Catherine M. Rojko, Environmental Enforcement Section, U.S. Dept. of Justice, Washington, DC, Robert J. DeSousa, Asst. U.S. Atty., Chief, Civ. Div., M.D. Pa., Lewisburg, PA, for plaintiff.

Robert L. Collings, Frank M. Thomas, Jr., Kenneth A. Rubin, Sarah E. Davies, Morgan, Lewis & Bockius, Philadelphia, PA, for defendants American Color and Chemical Corp. and Beazer East, Inc.

Daniel Segal, Claire Rocco, Steven J. Engelmyer, Philadelphia, PA, Robert N. Gawlas, Jr., Rosenn, Jenkins & Greenwald, Wilkes–Barre, PA, for defendant Pfister Chemical, Inc.

## MEMORANDUM

McCLURE, District Judge.

### BACKGROUND

This is an action by the United States for reimbursement of response costs and for a declaratory judgment[1] on liability pursuant to sections 107 and 113(g)(2) of the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. §§ 9607(a) and 9613(g)(2), in connection with the Drake Chemical Superfund Site (the Drake site or the site) and the American Color and Chemical facility (the AC & C

---

1. 28 U.S.C. § 2201.

facility or the site) located in Lock Haven, Clinton County, Pennsylvania.[2]

The Environmental Protection Agency (EPA) began cleanup efforts at the site in February, 1982. The Drake site was placed on the National Priorities List (NPL) in 1983 pursuant to section 105 of CERCLA, 42 U.S.C. § 9605. The NPL identifies facilities nationwide at which the release or threatened release of hazardous substances poses a serious threat to the public health and the environment.

The United States is now seeking reimbursement of the costs it incurred in responding to the release of hazardous substances at the site from owner/operators allegedly liable as responsible parties under section 9607(a), namely American Color and Chemical Corporation (AC & C),[3] Pfister Chemical, Inc. (Pfister) and Beazer East, Inc. (Beazer).[4]

The United States seeks to recover expenses which it has incurred and will incur in the future in cleanup efforts. The Commonwealth of Pennsylvania was granted leave to intervene as a plaintiff, Fed.R.Civ.P. 24, to recover those costs which it is obligated to pay, and has paid, under section 104 of CERCLA, 42 U.S.C. § 9604 and pursuant to three Superfund State Contracts between it and EPA. The Commonwealth is obligated to pay 10% of the cost of the remedial action, and 100% of all future operation and maintenance costs of the remedial action.

EPA's involvement with the Drake site began in 1980. Investigations conducted by, and under the direction of, EPA revealed contaminated surface water, groundwater and soil. EPA conducted a Remedial Investigation/Feasibility Study (Phase I RI/FS) to determine the nature and extent of contamination of a leachate stream, leachate lagoons, and nearby Bald Eagle Creek, and to assess alternatives for remediation. EPA issued the first record of decision (ROD I) for the remediation of the leachate stream in September, 1984. Work under ROD I was completed in 1987. A second RI/FS (Phase II RI/FS) conducted to determine the nature and extent of contamination of buildings, lined lagoons, and other structures at the Drake site was completed in March, 1986. ROD II was issued in May, 1986 for the remediation of those structures. That work is now, also, completed. (Record Document No. 56 at p. 5)

Following completion of the work required under RODs I and II, EPA began work on a third RI/FS (Phase III RI/FS) to determine the extent of contamination in soils and sediment at the site. Results from that analysis were interpreted to indicate that contaminants were distributed throughout the site, and that contamination had leached through the layers of soil and sludge to the groundwater table. On the basis of these findings, EPA determined in a third ROD (ROD III) issued September 29, 1988, that remedial action in the form of incineration of the entire 12.5 acre site is necessary, and has received bids for the project. The EPA proposes to incinerate the soil down to groundwater, to depths averaging more than 12 feet. The project is estimated to take 3 to 5 years to complete at a cost of $ 123 million.

Before the court is a motion by the United States to dismiss the counterclaims filed against it by defendants AC & C, Beazer and Pfister[5] in which the Commonwealth joins.[6] AC & C and Beazer assert four counterclaims which are stated in a joint amended counterclaim, filed April 12, 1993.[7] Pfister subsequently amended its answer to assert three of the four counterclaims asserted jointly by AC & C and Beazer.[8]

AC & C and Beazer counterclaim on the basis of: 1) the government's "emergency removal action" conducted at the site in 1987,

2. Jurisdiction exists pursuant to 28 U.S.C. §§ 1331, 1345 and 1355 and 42 U.S.C. §§ 9607(a) and 9613(b).

3. American Color was formerly known as American Aniline Products, Inc.

4. Beazer was formerly known as Koppers Company, Inc.

5. Record document no. 33.

6. Record document no. 88.

7. Record document no. 24.

8. Record document no. 26.

the "leachate stream remediation project" conducted at the site in 1987 pursuant to ROD I and the project for "remediating the buildings, lined lagoons and all other structures" undertaken at the site pursuant to ROD II. Defendants assert that those actions give rise to liability: 1) under CERCLA section 107, since the United States was acting as an owner/operator in conducting those operations; 2) under CERCLA section 113, 42 U.S.C. § 9613 for contribution since the United States is partially responsible for the response costs which it seeks to recover from the defendants; 3) under a right of recoupment or setoff, since the United States acted with negligence, gross negligence, and/or willful misconduct and was carrying out abnormally dangerous activities when it incurred the response costs which it now seeks to recover from defendants; and 4) under CERCLA section 107(a), since the United States "converted property of AC & C to its use" while conducting the cleanup and violated the constitution in carrying out an "illegal taking or conversion or trespass" making it responsible "for defensive setoff of its claims here, [and] to the extent any award is made to the United States, as a recoupment in favor of AC & C." (Record document no. 24, ¶¶ 38–44).

Pfister asserts counterclaims: 1) under CERCLA section 107(a)(2) based on its contention that the actions taken by the United States pursuant to RODS I and II rendered it an operator of the site for section 107 purposes; 2) under CERCLA section 107(a)(4) based on its contention that in carrying out remedial measures the United States disposed of and transported, or arranged for the transportation of hazardous substances onto the site. It also asserts a claim for contribution under CERCLA section 113 for response costs incurred and yet to be incurred in connection with the site and a claim for recoupment or setoff based on the United States' alleged breach of duties owed to Pfister and harm allegedly caused to Pfister as a result of its alleged negligence, gross negligence, willful misconduct, or abnormally dangerous activities. (Record document no. 26.)

The United States has moved to dismiss all counterclaims asserted for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim upon which relief can be granted.[9] The basis for the United States' motion is its contention that sovereign immunity has not been waived for EPA activities conducted in connection with a cleanup site. The United States contends that defendants' only recourse is to challenge its actions at the cleanup site as inconsistent with the National Contingency Plan.

## DISCUSSION

### Rule 12(b) standards

The United States seeks dismissal of defendants' counterclaims and claims for recoupment and contribution under both Rule 12(b)(1) based on an asserted lack of subject matter jurisdiction and Rule 12(b)(6) based on an asserted failure to state a claim upon which relief can be granted.

Under a Rule 12(b)(6) motion, a complaint may not be dismissed for failure to state a claim upon which relief can be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which could entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The court must accept all material allegations in the complaint as true and construe them in the light most favorable to the party opposing the motion. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Johnsrud v. Carter*, 620 F.2d 29 (3d Cir.1980); and *Truhe v. Rupell*, 641 F.Supp. 57, 58 (M.D.Pa. 1985) (Rambo, J.). Although the complaint is to be liberally construed in favor of the plaintiff. (See: Fed.R.Civ. 8(f)), the court does not have to accept every allegation it contains as true. Conclusory allegations of law, unsupported conclusions and unwarranted inferences need not be accepted as true. *Conley, supra*, 355 U.S. at 45–46, 78 S.Ct. at 101–02.

### EPA response

There are three alternatives under CERCLA for responding to the release or threatened release of hazardous substances: 1) The EPA can conduct its own cleanup of the site

---

9. Record document no. 33.

and then recover its remedial and response costs from the responsible parties. 42 U.S.C. § 9604(a) and 9607(a). 2) The EPA can order the potentially responsible parties to clean up hazardous substances on their property. 42 U.S.C. § 9606(a). 3) Third parties can carry out the cleanup efforts and recover their costs from the responsible parties. 42 U.S.C. § 9607(a) and 9612. *Reardon v. United States,* 731 F.Supp. 558, 561 (D.Mass. 1990), *modified on other grounds,* 947 F.2d 1509 (1st Cir.1991).

The first alternative is the one chosen by the EPA in this instance. Under this option, the EPA has the right to bring an action in federal court to recover its response costs from the responsible parties. Response costs include the cost of both removal and remedial actions. The two are distinguished by the time frame and the extensiveness of the action. A removal action is generally an immediate or interim measure undertaken to abate a present, serious threat to the public welfare. 42 U.S.C. § 9601(23). A remedial action, on the other hand, is a long-term or permanent solution to the problem. 42 U.S.C. § 9601(24). See: *Reardon, supra,* 731 F.Supp. at 563.

### Owner/operator liability

■ Defendants argue [10] that the United States' cleanup operations at the site render it an owner/operator of the facility and subject it to liability under section 107(a)(2) of CERCLA on that basis. This contention has been asserted and rejected before by the federal courts.

■ Owner/operators are one of four categories of potentially responsible parties upon whom liability can be imposed under CERCLA section 107.[11] While it is true that the United States is a "person" under CERCLA section 101(21) upon which liability can be imposed under section 120 of CERCLA,[12] liability can be imposed only when the government acts as the operator of a business concern,[13] not when it is acting in a governmental or regulatory capacity. It is only when the government acts as a business concern that the waiver of immunity set forth in section 120 of CERCLA applies. *United States v. Atlas Minerals and Chemicals, Inc.,* 797 F.Supp. 411, 419–20 (E.D.Pa.1992) and *United States v. Western Processing Company,* 761 F.Supp. 725, 729 (W.D.Wash. 1991). The federal government's sovereign immunity remains intact when it is acting in a regulatory capacity. *Atlas Minerals, supra,* 797 F.Supp. at 419 ("CERCLA counterclaims against the EPA for actions undertaken by the EPA in conjunction with cleanup activities.... are clearly barred."); *In re Paoli Railroad Yard PCB Litigation,* 790 F.Supp. 94 (E.D.Pa.1992); *United States v. Azrael,* 765 F.Supp. 1239, 1245 (D.Ma.1991); and *Western Processing, supra,* 761 F.Supp. at 729.

---

**10.** AC & C and Beazer Amended Counterclaim, record document no. 24, ¶¶ 20–28.

**11.** The other three categories of potentially responsible parties are:

1) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of;

2) any person who by contract, agreement, or otherwise arranged for disposal or treatment ... of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances; and

3) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance....

42 U.S.C. § 9607(a).

**12.** Section 120(a)(1) requires the federal government to comply with CERCLA and imposes liability for noncompliance. It provides, in relevant part, that:

Each department, agency, and instrumentality of the United States ... shall be subject to, and comply with, this chapter in the same manner and to the same extent ... as any nongovernmental entity, including liability under section 9607 of this title.

42 U.S.C. § 9620(a).

**13.** See, e.g., *United States v. Skipper,* 781 F.Supp. 1106, 1111 (E.D.N.C.1991) ("Congress expected government agencies to shoulder their proportionate share of CERCLA response costs when they have acted as owners, operators, generators or transporters.")

The federal government is not acting "in a fashion analogous to that of a business concern" when it engages in the cleanup of a Superfund site. "No private party is obligated to perform such remedial operations under CERCLA. When the United States undertakes response actions pursuant to CERCLA, it is not acting like any nongovernmental entity." *Paoli Railroad Yard, supra,* 790 F.Supp. at 97. See also: *United States v. Shaner,* Civil No. 85–1372, slip op. at 4–5 (E.D.Pa. June 15, 1992) (1992 WL 154652).

Although defendants in the case *sub judice* attempt to distinguish the facts of this case from those cited above, by arguing that the EPA acted outside the bounds of its regulatory authority in carrying out the cleanup at the site, their argument is just a recasting of the argument that EPA cleanup activities render the government an owner/operator or generator/transporter of hazardous waste under section 107. All activities conducted by the EPA at the site were done under the auspices of RODs mandating government cleanup of the site. While defendants disagree with the manner in which the cleanup was carried out, and argue that the EPA's negligence increased the magnitude of the problem in certain respects, that is a matter to be considered in the cost/damage assessment phase of this action.[14] Defendants can only raise the arguments asserted here in contesting the consistency of the measures taken by the EPA with the NCP. They are not the proper subject of a counterclaim, since there has been no waiver of sovereign immunity. See generally: *Western Processing, supra,* 761 F.Supp. at 730 (Congress' decision to impose liability on the federal government when it acts as a business concern "does not mean that Congress intended to shift liability back to the taxpayers whenever EPA's regulatory efforts at hazardous waste sites are less than successful.")

### Transporter/generator liability

■ Defendants also seek to impose CERCLA section 107 liability on the United States on the grounds that as part of its cleanup activities it transported hazardous substances onto the site, rendering it a trans-porter generator of hazardous waste and therefore subject to liability on that ground. That argument fails for the same reasons defendants cannot prevail on the attempt to impose owner/operator liability on the United States for cleanup activities. It has been similarly rejected by the overwhelmingly majority of federal courts on the ground that there has been no waiver of sovereign immunity for EPA cleanup activities. See: *Paoli Railroad Yard PCB Litigation, supra.*

The absence of a waiver of sovereign immunity for EPA regulatory/cleanup activities requires this court to dismiss defendants' CERCLA section 107 counterclaims for lack of subject matter jurisdiction. *Western Processing, supra,* 761 F.Supp. at 730.

### Claims for contribution

Defendants base their claim for contribution or indemnification on section 113 of CERCLA. Section 113(f)(1), 42 U.S.C. § 9613(f)(1), authorizes contribution actions only against liable or potentially liable parties, i.e. parties who are owners, generators, or transporters within the meaning of CERCLA Section 107(a)(1)–(4), 42 U.S.C. § 9607(a)(1)–(4). As discussed above, that category does not include the United States government. There is, therefore, no basis for assertion of a contribution claim against the federal government based on its regulatory activities at the site, since there has been no waiver of sovereign immunity with respect to such activity.

### Recoupment claims

■ The United States also moves to dismiss defendants' claims of recoupment on the ground that recoupment is not available under the facts presented. Recoupment is a common law, equitable doctrine that permits a defendant to assert a defensive claim against a plaintiff, arising from the same contract or transaction as the plaintiff's claim, to reduce the amount of the damages recoverable by the plaintiff. *Berger v. City of North Miami,* 820 F.Supp. 989, 992 (E.D.Va.1993). It "is the common law precursor to the modern compulsory counterclaim." *Id.,* citing Fed.R.Civ.P. 13(a) and 6

---

**14.** See pp. 452–453 *infra.*

Wright, Miller & Kane, *Federal Practice and Procedure*, § 1401 (1990).

"A recoupment claim can be asserted only when the plaintiff is seeking damages for a defendant's actions and the defendant counterclaims seeking to reduce any potential damage award because of the plaintiff's actions." *United States v. Ownbey Enterprises, Inc.*, 780 F.Supp. 817, 821 (N.D.Ga.1991).

■ If recoupment applies, no independent waiver of sovereign immunity is required,[15] since it rests on the principle that sovereign immunity should not prevent a private person from raising, in his or her defense, claims that arise from the same transaction or occurrence on which the government is seeking to recover damages. *Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 947 (Fed.Cir.1993) and *United States v. Iron Mountain Mines, Inc.*, 812 F.Supp. 1528, 1552 (E.D.Ca.1992). Recoupment permits recovery only on those claims to which it applies, not on all claims which the defendant may have against the government. "[A]ffirmative relief beyond recoupment is not available." *Genentech, supra*, 998 F.2d at 947, citing *United States v. Shaw*, 309 U.S. 495, 501–02, 60 S.Ct. 659, 661–62, 84 L.Ed. 888 (1940). (Rejecting the argument that when the government brings a court action, it subjects itself to any claim). See also: *Spawr v.*

*United States*, 796 F.2d 279, 281 (9th Cir. 1986) ("When the United States institutes an action, the defendant may assert only compulsory counterclaims.") and *Iron Mountain Mines, supra*, 812 F.Supp. at 1551.

■ To recover on a claim of recoupment, the party must establish that: 1) the claim arises from the same transaction or occurrence as the main claim; 2) it seeks relief of the same kind and nature as that sought by the main claim; and 3) the claim is defensive in nature and does not seek affirmative relief. *Berger, supra*, 820 F.Supp. at 992, citing *Frederick v. United States*, 386 F.2d 481, 487 (5th Cir.1967). See also: *Livera v. First National State Bank*, 879 F.2d 1186, 1195–96 (3d Cir.), *cert. denied, Livera v. Small Business Administration*, 493 U.S. 937, 110 S.Ct. 332, 107 L.Ed.2d 322 (1989) and *Atlas Minerals, supra*, 797 F.Supp. at 421.

The requirement that the claim must arise out of the same transaction or occurrence has frequently been the basis for the rejection of recoupment claims asserted in defense of a CERCLA action filed by the United States to recover EPA response costs. While some courts have adopted a more liberal interpretation of the "same transaction" requirement and permitted counterclaims arising out of the cleanup operations,[16] others have adopted

---

**15.** This facet of the recoupment doctrine renders irrelevant the United States' argument that recoupment is not available to the defendants because there has been no independent waiver of sovereign immunity under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671–2680. Defendants argue that all tort claims against the federal government must be asserted under the FTCA, and that such relief is unavailable in this case, because the EPA conduct which defendants challenge falls within the discretionary exception to the waiver of sovereign immunity effected by the FTCA.

"If a tort claim is a proper recoupment claim, then a defendant does not have to meet the requirements under FTCA to establish jurisdiction." *United States v. Amtreco*, 790 F.Supp. 1576, 1581 (M.D.Ga.1992), citing *United States v. Johnson*, 853 F.2d 619 (8th Cir.1988) (when the government waived sovereign immunity by bringing suit to recover on a loan, the borrower could assert a negligent misrepresentation claim arising from the same transaction even when such claim is normally barred by the FTCA) and *United States v. Ownbey Enterprises, Inc.*, 780 F.Supp. 817 (N.D.Ga.1991). The government, merely by filing suit, waives sovereign immunity

as to recoupment claims. *Id.* at 820, citing *Frederick v. United States*, 386 F.2d 481 (5th Cir. 1967).

If the recoupment doctrine applies to the claims asserted by defendants, no other basis is necessary for the assertion of defendants' claims. If recoupment applies, defendants have the right to assert it as a defense to the claims filed against them by the United States, independent of any right to sue which defendants may or may not possess under the FTCA or any other law or doctrine.

**16.** See, e.g. *Shaner, supra*, slip op. at 11 n. 10 (District court found that CERCLA defendant's "counterclaims arise out of the same occurrence that give rise to the USA's claims.... [B]oth parties seek essentially the same relief: the USA seeks to establish ... [defendant's] liability for costs resulting from the response action, and ... [defendant] seeks to establish the USA's liability for costs which ... [the defendant] has or may incur as the result of the USA's alleged response action."); *Iron Mountain Mines, supra*, 812 F.Supp. at 1552 (Recoupment claim arising out of challenge to United States' response action

a restrictive approach and required recoupment claims asserted in a CERCLA action to relate directly to the actual pollution of the affected site,[17] not solely to the aftermath.

■ Consistent with recoupment's modern-day evolution into Rule 13(a) compulsory counterclaims, some federal courts have utilized the Rule 13(a) test in CERCLA actions to determine whether a defendant's claim of recoupment arises from the same transaction or occurrence as the United States' cost-recovery claim. "This standard ensures that collateral matters are not joined with the CERCLA action so as to result in unwarranted expense and delay in resolution of the CERCLA claim." *Berger, supra,* 820 F.Supp. at 992. Three factors bear on the availability of a Rule 13(a) compulsory counterclaim: 1) whether issues of fact and law raised by the claim and the counterclaim "are largely the same;" 2) "whether substantially the same evidence bears on both claims;" and 3) "whether any logical relationship exists between the two claims." *Id.* at 992–93, citing *Whigham v. Beneficial Finance Co.,* 599 F.2d 1322, 1323 (4th Cir.1979).

While the restrictiveness of the standards applied and the stated rationales differ somewhat,[18] most recent cases have rejected re-coupment claims arising out of EPA cleanup operations asserted in a defense of a CERCLA claim to recover EPA response costs.

Cases in which the CERCLA defendant sought to recover for goods or property allegedly confiscated or destroyed by the United States are another matter. In most such cases, the courts have concluded, that recoupment claims do arise out of the cleanup action, permitting defendants to proceed on those claims. See, e.g. *United States v. Amtreco, Inc.,* 790 F.Supp. 1576, 1582 (M.D.Ga. 1992) (Court permitted recoupment claims based on EPA conduct during the cleanup operation, stating: "[D]efendants' claims alleging conversion and property damage are logically related to the government's claim for cleanup costs. All of the claims arise from the same occurrence—the cleanup operation of the site.") and *United States v. Moore,* 703 F.Supp. 455, 459 (E.D.Va.1988) (District court permitted defendants to maintain a recoupment tort counterclaim against the government's CERCLA claim which arose out of the government's alleged confiscation of 400 fire extinguishers during its cleanup operations and the government's previous sale of allegedly defective gas cylinders to the defendants, with the court finding a sufficiently close nexus between the claims

permitted.); and *United States v. Moore,* 703 F.Supp. 455, 459 (E.D.Va.1988).

**17.** See, e.g., *Berger, supra,* 820 F.Supp. at 993 (Contract-based recoupment claim rejected since it "raised questions of state law" which would require "markedly different factual inquiries" and markedly different evidence than the CERCLA claims asserted.) and *United States v. Hardage,* 750 F.Supp. 1460, 1519 (W.D.Okl.1990) (Following a bench trial, district court found that alleged EPA negligence did not arise from same transaction as defendant's waste disposal giving rise to CERCLA liability.). Compare: *United States v. Smuggler–Durant Mining Corporation,* 823 F.Supp. 873, 878 (D.Colo.1993) (Recoupment claim rejected on the ground that the defenses set forth in section 107(b) of CERCLA are the exclusive defenses to liability for response costs.) and *United States v. M/V SANTA CLARA I,* 819 F.Supp. 507, 514 (D.S.C.1993) (Recoupment claim rejected on the basis that counterclaimants "did not have a reimbursement claim that could be judicially asserted against the United States because they had not yet presented their claim to the EPA.").
Compare: *United States v. Ownbey Enterprises, Inc.,* 780 F.Supp. 817 (N.D.Ga.1991), the district court found that defendant's counterclaim was not a proper recoupment claim, since the relief sought was not the same. The United States sued to recover civil penalties to ensure compliance with an EPA order. The defendant attempted to assert a recoupment claim for alleged misrepresentation by the government when the defendant signed the EPA order. The court found that the two claims were "fundamentally different in scope and nature because they [sought] to rectify two different types of alleged wrongs." *Id.* The court did state in *dicta,* however, that had the United States sued to recover damages and costs, not statutory penalties, the relief requested would have been the same and the recoupment claim would have been permitted. *Id.* at 821.

**18.** See the comparison of cases at *Berger, supra,* 820 F.Supp. at 994. Compare: *United States v. Amtreco, Inc.,* 790 F.Supp. 1576, 1580 (M.D.Ga. 1992), citing *Miami Herald Publishing Co. v. Ferre,* 636 F.Supp. 970 (S.D.Fla.1985) ("[T]he logical relationship test 'is a loose standard which permits a 'broad realistic interpretation in the interest of avoiding a multiplicity of suits. The hallmark of this approach is flexibility.'").

in part because the claim for the taking of the fire extinguishers arose "at the exact time of the clean-up which form[ed] the basis of the government's suit.")

■ Here, defendants base their claim of recoupment on the alleged "negligence, gross negligence, willful misconduct or abnormally dangerous activities of the United States." (Record document no. 24, ¶ 35 and record document no. 26, ¶ 32). Specifically, defendants allege negligence on the part of the United States in: 1) permitting oleum [19] in a tank on the site to spill or be released into the atmosphere, resulting in "the formation of an oleum cloud which released acid vapor onto the Drake site and surrounding areas, causing substantial damage; [20] 2) the United States' excavation and bulldozing of lined lagoons into which it had previously deposited offsite soils, allegedly resulting in the disposal of contaminated offsite soil and the release of hazardous substances; 3) hosing down structures on the Drake site without taking any precautions to prevent the contaminated water resulting from this operation from flowing offsite; and 4) conducting testing at the site which caused contaminated groundwater to be pumped to the surface, where it was permitted to run off with no precautions to prevent migration offsite or the migration of contaminants into groundwater. (Record document no. 24, ¶¶ 7–19 and record document no. 26, ¶¶ 7–19).

The claims asserted against defendants by the United States arise from the release of hazardous substances at the site during the decades prior to 1980, which resulted in the contamination necessitating an EPA response. The claims asserted by defendants based on alleged government negligence arise from the cleanup operation conducted during the 1980's, and which is still on-going. Because the claims arise from two wholly different series of events, they do not satisfy the first of the three mandatory requirements of recoupment. They do not arise out

of the same event or occurrence. See, e.g., *Berger, supra,* 820 F.Supp. at 992. Nor do they, because of their differing origins, depend upon the same evidence or raise the same issues. They do not, therefore, qualify as claims of recoupment and will be dismissed on that basis. *Id.* at 992–93.

Further, permitting defendants to interject claims of recoupment in defense of CERCLA claims filed against them by the United States would undermine the statutory scheme devised by Congress which permits only those defenses listed in CERCLA section 107(b) to be asserted during the liability phase of a CERCLA cost recovery action and requires claims which go to the alleged inconsistency of a response action to the NCP to be asserted during the damage/cost assessment phase of the trial. See: *United States v. Smuggler–Durant Mining Corporation,* 823 F.Supp. 873, 878 (D.Colo.1993) (Recoupment claim rejected on the ground that the defenses set forth in section 107(b) of CERCLA are the exclusive defenses to liability for responses costs.).

**AC & C claims for conversion and illegal taking**

Only one claim asserted by defendants remains for our consideration. AC & C asserts a claim against the United States under CERCLA section 107(a) alleging that it "converted property of AC & C to its use" while conducting the cleanup and violated the Constitution in carrying out an "illegal taking or conversion or trespass" making it responsible "for defensive setoff of its claims here, [and] to the extent any award is made to the United States, as a recoupment in favor of AC & C." (Record document no. 24, ¶¶ 38–44).

AC & C's claim is a hybrid, which mixes several distinct causes of action into one. It invokes section 107(a), the CERCLA section which imposes liability on the parties responsible for contamination of a site, including the

---

**19.** Oleum is concentrated sulfuric acid and is classified as a hazardous substance within the meaning of section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

**20.** Alleged liability of the United States to a private insurance carrier which compensated sur-

rounding property owners for resulting damage caused by release of the oleum cloud was the subject of an action filed in this court, *United States Fidelity & Guaranty Company v. United States,* 837 F.2d 116 (3d Cir.1988), *reversing* 638 F.Supp. 1068 (M.D.Pa.1986).

United States when it is acting as a business concern, as well as the doctrines of defensive setoff and recoupment. It also asserts a taking claim, presumably based on the Fifth Amendment.

To the extent that AC & C's remaining claim is grounded on alleged section 107 liability for actions taken by the EPA during the cleanup operation, it is clearly barred by sovereign immunity for the reasons stated above. To the extent that AC & C is asserting a claim for recoupment or setoff, it is also barred for the reasons stated above.

■ Finally, to the extent AC & C is asserting a Fifth Amendment taking claim based on EPA's alleged confiscation of its property during the cleanup operation, while such a claim is not barred, it cannot properly be asserted in defense of the CERCLA claims brought by the United States in this action. Defenses to a CERCLA are limited to those set forth in section 107(b). Therefore, AC & C may bring a Fifth Amendment taking claim independent of this action, but cannot assert such a claim in defense of the United States' suit for EPA response costs.

### Inconsistency with the National Contingency Plan

Defendants are not without redress for their contention that EPA failed to carry out the cleanup operation properly and that its alleged errors increased response costs which defendants are now being asked to pay. Response costs are recoverable by the United States only to the extent the costs incurred are consistent with the National Contingency Plan (NCP). CERCLA section 107(a)(4)(A) bars the EPA from recovering expenditures which are "inconsistent with the national contingency plan...." 42 U.S.C. § 9607(a)(4)(A).

Defendants can, therefore, in defense of the cost-recovery claims filed against them, assert inconsistency with the NCP of increased costs allegedly caused by EPA errors. That procedure, not the assertion of counterclaims through attempts to characterize the EPA as a owner/operator of the cleanup site, is the proper method for challenging cleanup costs incurred. *Western*

*Processing, supra,* 761 F.Supp. at 729. "Concerns about the propriety of the EPA's response action should be addressed as part of a determination for consistency with the NCP." *Azrael, supra,* 765 F.Supp. at 1246. See also: *Atlas Minerals, supra,* 797 F.Supp. at 419–20 ("The sole way in which CERCLA defendants can challenge the propriety of the EPA's response and remediation actions is by arguing, in the damages phase of a CERCLA case, that those actions were inconsistent with the NCP."); *Paoli Railroad Yard, supra,* 790 F.Supp. at 97 ("It is clear from the statutory language that Congress envisioned that the propriety of cleanup conduct be judged solely by the 'not inconsistent' standard as part of EPA's cost recovery action."); and *Azrael, supra,* 765 F.Supp. at 1246.

### Summary

For the above reasons, this court finds that the defendants have failed to demonstrate an unequivocal waiver of sovereign immunity with respect to the counterclaims asserted against the United States. We will, therefore, dismiss the counterclaims asserted for lack of subject matter jurisdiction due to the absence of a waiver of sovereign immunity. The claims for recoupment and a Fifth Amendment taking are dismissed as beyond the proper scope of this action.

### *ORDER*

For the reasons stated in the accompanying memorandum, **IT IS ORDERED THAT:**

1. The United States' motion to dismiss the counterclaims filed against it by defendants American Color and Chemical Corporation (American Color), Pfister Chemical, Inc. (Pfister) and Beazer East, Inc. (Beazer) is granted to the extent of the relief provided in this order.

2. All counterclaims and claims for recoupment and contribution asserted by defendants AC & C and Beazer in the joint amended counterclaim, filed April 12, 1993 are dismissed.

3. All counterclaims and claims for recoupment and contribution asserted by de-

fendant Pfister in its amended counterclaim, filed April 12, 1993 are dismissed.