UNITED STATES of America, Plaintiff,

v.

Kevan M. GREEN and Polymer Applications, Inc., Defendants and Third–Party Plaintiffs,

v.

Kevin Matheis, Third–Party Defendant.

No. 97–CV–0271A.

United States District Court, W.D. New York.

Dec. 10, 1998.

Denise E. O'Donnell, United States Attorney (Mary K. Roach, of Counsel), Buffalo, NY, United States Department of Justice, Environmental Enforcement Section (Lori J. Schiffer, of Counsel), Washington, D.C., United States Department of Justice, Civil Division, Torts Branch (Gay E. Kang, of Counsel), Washington, D.C., for Plaintiff.

Jeffrey M. Blum, Louisville, KY, for Defendants and Third–Party Plaintiffs.

## ORDER

ARCARA, District Judge.

This case was referred to Magistrate Judge Leslie G. Foschio, pursuant to 28 U.S.C. § 636(b)(1), on October 20, 1997. On December 19, 1997, plaintiff United States of America filed motions to strike defendants' affirmative defenses and to dismiss defendants' counterclaim. Also on December 19, 1997, third-party defendant Kevin Matheis filed a motion to dismiss the third-party complaint. On September 30, 1998, Magistrate Judge Foschio filed a Report and Recommendation, recommending that plaintiff's motion to strike the affirmative defenses be granted in part and denied in part; that plaintiff's motion to dismiss the counterclaim be granted and that third-party defendant's motion to dismiss the third-party complaint be granted.

Defendants/third-party plaintiffs filed objections to the Report and Recommendation on October 16, 1998, objecting to the recommendation that their counterclaim and third-party complaint be dismissed. They do not object to that portion of the Report and Recommendation relating to the motion to strike affirmative defenses. On November 9, 1998, the United States and Kevin Matheis filed memoranda in response to the objections. Oral argument on the objections was held on November 20, 1998.

Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a *de novo* determination of those portions of the Report and Recommendation to which objections have been made. Upon a *de novo* review of the Report and Recommendation, and after reviewing the submissions and hearing argument from the parties, the Court adopts all the proposed

findings of the Report and Recommendation, including all findings made in the alternative.

Accordingly, for the reasons set forth in Magistrate Judge Foschio's Report and Recommendation, the Court: (1) grants plaintiff's motion to strike the first affirmative defense with leave to replead; (2) grants plaintiff's motion to strike the second and third affirmative defenses; (3) denies plaintiff's motion to strike the fourth affirmative defense; (4) grants plaintiff's motion to dismiss the counterclaim; and (5) grants third-party defendant's motion to dismiss the third-party complaint.

This case is referred back to the Magistrate Judge for further proceedings.

IT IS SO ORDERED.

### REPORT and RECOMMENDATION

FOSCHIO, United States Magistrate Judge.

### *JURISDICTION*

This case was referred to the undersigned on October 20, 1997 by the Hon. John T. Curtin for disposition of all non-dispositive motions.[1] It is currently before the court on Plaintiff's motions filed December 19, 1997 to strike Defendants/Third–Party Plaintiffs' affirmative defenses (Doc. # 15), to dismiss Defendants/Third–Party Plaintiffs' counterclaim (Doc. # 14), and on Third–Party Defendant's motion to dismiss the Third–Party Complaint (Doc. # 16), filed December 19, 1997.

### *BACKGROUND*

The United States ("Plaintiff") filed this action against Kevan M. Green ("Green") and Polymer Applications, Inc. ("Polymer") (collectively, "Defendants/Third–Party Plaintiffs"), on April 10, 1997, pursuant to Sections 107(a) and 113(b) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9607 and 9613(b), as amended, to recover costs incurred by Plaintiff in responding to the release or threat of release of hazardous substances into the environment from Polymer's resin manufacturing plant ("the

Plant"), located in Tonawanda, New York, in accordance with § 104 of CERCLA, 42 U.S.C. § 9604. Defendants answered the Complaint on September 29, 1997, and filed an Amended Answer on October 15, 1997. In their Amended Answer, Defendants/Third–Party Plaintiffs raise five affirmative defenses and assert a counterclaim against Plaintiff and a cross-claim against Third Party Defendant Kevin Matheis ("Matheis").

The court's scheduling order of November 26, 1997 directed Plaintiff to file any motions to strike the affirmative defenses or to dismiss the counterclaim or third-party complaint by December 19, 1997. Responses by Defendants/Third–Party Plaintiffs were to be filed by January 8, 1998. Also on November 26, 1997, fact discovery was stayed pending the filing and determination of the motions to strike or dismiss.

Defendants/Third–Party Plaintiffs assert as affirmative defenses that (1) there was no release or threat of release of hazardous substances into the environment for which liability may be imposed under CERCLA, (2) any release of hazardous substances at the Plant was not into the environment but, rather, solely into the workplace, (3) many of the hazardous materials detected at the Plant were either of minuscule quantity or had been altered so that they no longer qualified as hazardous substances under CERCLA, (4) Green, despite his ownership and effective control over Polymer, did not engage in any activity for which personal liability may be imposed under CERCLA, and (5) Defendants/Third–Party Plaintiffs did not unreasonably deny the EPA access to the Polymer Superfund Site ("the Polymer Site") and, as such, no penalty may be imposed upon them pursuant to 42 U.S.C. 9604(e).

Defendants/Third–Party Plaintiffs assert as a counterclaim against Plaintiff that the EPA's grossly negligent mismanagement of the Polymer Site during its occupation in connection with the removal and cleanup operations resulted in property damage and conversion of assets. Defendants/Third–Par-

---

**1.** On October 22, 1997, this case was transferred to the Hon. Richard J. Arcara.

ty Plaintiffs also allege a Third–Party *Bivens* claim against Matheis.[2]

On December 19, 1997, Plaintiff moved under Fed.R.Civ.P. 12(f) to strike Defendants/Third–Party Plaintiffs' first four affirmative defenses as legally insufficient,[3] and to dismiss Defendants/Third–Party Plaintiffs' counterclaim for lack of jurisdiction and for failure to state a claim. Also on December 19, 1997, Matheis moved to dismiss the Third–Party Complaint for lack of jurisdiction and for failure to state a claim.

Defendants/Third–Party Plaintiffs' response to all three motions to strike and to dismiss was filed on January 13, 1998. By letter to the court dated January 16, 1998, Plaintiff requested permission to filed replies with regard to the two motions to dismiss.[4] That request was granted and the reply memoranda of law in further support of those motions were filed on February 2, 1998. On February 25, 1998, a corrected copy of Plaintiff's reply memorandum of law in further support of the motion to dismiss the counterclaim was filed. Oral argument was deemed unnecessary.

Based on the following, Plaintiff's motion to strike Defendants/Third–Party Plaintiffs' affirmative defenses should be GRANTED in part and DENIED in part; Plaintiff's motion dismiss Defendants/Third–Party Plaintiffs' counterclaim should be GRANTED; and Third–Party Defendant's motion to dismiss the Third–Party Complaint should be GRANTED.

## FACTS [5]

In 1968, Green commenced operation of a phenolic resin manufacturing business known as Polymer Applications in Tonawanda, New York ("the Polymer Site"). Green became President and sole shareholder of Polymer Applications at the time it was incorporated in 1972, when it became known as Polymer Applications, Inc. ("Polymer"), until the present. Green and Polymer are the entities that appear as Defendants/Third–Party Plaintiffs in this action.

In connection with its resins manufacturing operations, Polymer stored hazardous substances in drums, tanks and other containers at the Polymer site. On July 3, 1988, the Plant was heavily damaged by a fire. Following the fire, Polymer continued its resin manufacturing activities on a limited basis until March 1989 when it ceased operations. The chemicals stored at the Plant, as well as finished products, drums and tanks, remained at the site following the fire and cessation of Polymer's business operations.

Between 1968 and 1988, the New York State Department of Environmental Conservation ("DEC") documented a number of releases of hazardous substances at the Polymer Site. In 1981 and 1988 the DEC issued Consent Orders to Polymer, thereby citing Polymer for chemical discharges. In 1990, the DEC began a state-funded investigation of the Polymer Site. A DEC Remedial Investigation and Feasibility Study ("RI/FS") of the Polymer Site was prepared in 1993. The DEC investigated detected hazardous substances leaking from tanks and drums on the Polymer Site. Based on these leaks, on March 10, 1994, the DEC verbally requested that the Environmental Protection Agency ("EPA") perform hazardous substance removal actions at the Polymer Site. A formal written request was made on March 14, 1994. On March 14, 1994, pursuant to CERCLA, 42 U.S.C. §§ 9601 *et seq.*, and the National Oil and Hazardous Substances Pollution Contingency Plan ("NCP"), 40 C.F.R. Pt. 300(E),

---

**2.** *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)(permitting actions against federal officers for alleged Fourth Amendment violations).

**3.** Plaintiff does not, at this time, seek dismissal of Defendants/Third–Party Plaintiffs' fifth affirmative defense with respect to Plaintiff's claim for penalties under 42 U.S.C. § 9604(e). Government's Memorandum of Law in Support of Motion to Strike Affirmative Defenses (Doc. # 18),

filed December 19, 1997, at 6 n. 7. Instead, Plaintiff has reserved its right to challenge the factual basis of such claim later in these proceedings. *Id.*

**4.** Plaintiff neither sought leave to file nor filed further papers in support of its motion to strike the affirmative defenses.

**5.** The fact statement is taken from the pleadings and motion papers filed in this action.

the EPA initiated a preliminary assessment and removal activity at the Polymer Site. The EPA assigned Matheis as the On–Scene Coordinator ("OSC") of the CERCLA removal action at the Polymer Site. As the OSC, Matheis was responsible for directing the federally-funded environmental response efforts and to coordinate the clean-up operation at the Polymer Site.

Matheis' first duty as OSC was to conduct a preliminary assessment of the Polymer Site. The preliminary assessment, prepared by Matheis, reported numerous leaks and threatened leaks of hazardous substances at the Polymer Site. Based on Matheis's investigation, George Pavlou, Acting Director of the EPA Region II Emergency and Remedial Response Division, authorized funding for an EPA removal action. Matheis was the OSC at the Polymer Site for the entire time that it was occupied by the EPA from the initiation of the preliminary assessment in March 1994 until the completion of the removal activities in December 1996.

Also on March 14, 1994, Matheis, on behalf of the EPA hired two private contracting businesses, the Emergency Response Cleanup Services ("ERCS") contractor Westinghouse Remediation Services ("Westinghouse") and the Technical Assistance Team contractor Roy F. Weston ("Weston"). O.H. Materials Corporation replaced Westinghouse as the ERCS contractor in November 1995 when Westinghouse's contract expired. These contractors were assigned the tasks of conducting the removal activities.

At the time the EPA commenced its removal actions at the Polymer Site in March 1994, the Plant was in a state of disrepair insofar as repairs were needed to the Plant's roof, windows and surrounding fence. Additionally, the Polymer Site had been heavily vandalized and construction debris dumped there. Defendants/Third–Party Plaintiffs maintain that they were prevented access to the Polymer Site during the time it was occupied by the EPA to either perform routine maintenance or to make repairs to the property. The EPA asserts that such access was denied based on Defendants/Third–Party Plaintiffs' failure to submit to the EPA a written work plan specifying how Defendants/Third–Party Plaintiffs planned to make repairs, recover products and inventory, and to arrange for sale of the same.

According to Defendants/Third–Party Plaintiffs, many of Plaintiff's actions at the Polymer Site were wasteful or destructive and because the EPA forbade their entry to the premises to make repairs or perform routine maintenance, deterioration of the containers in which the hazardous substances were stored resulted. Defendants/Third–Party Plaintiffs also maintain that the EPA ignored the fact that Polymer was a viable business which Green sought to reopen after completion of the EPA's removal activities. Defendants/Third–Party Plaintiffs further assert that except for phenol, an essential compound in the manufacture of resin, the amount of the hazardous substances detected at the Polymer Site were minute. Defendants/Third–Party Plaintiffs allege that Matheis therefore attempted to compensate for the lack of valid grounds for the EPA's presence at the Polymer Site by declaring the resins as "hazardous substance containing materials," ignoring the fact that such materials had, through the resin manufacturing process, become chemically inert and, according to Defendants/Third–Party Plaintiffs, non-hazardous.

Defendants/Third–Party Plaintiffs claim that the EPA and its agents, during their occupation of the Polymer Site were deliberately indifferent to security breaches at the Site. Defendants/Third–Party Plaintiffs further assert that the EPA and its agents purposefully dismantled portions of the facility and discarded valuable equipment and inventory without any valid regulatory basis, and unduly prolonged their occupation of the Polymer Site, thereby delaying Polymer's resumption of its resin manufacturing operations, resulting in economic damages to Defendants/Third–Party Plaintiffs.

Finally, Defendants/Third–Party Plaintiffs claim that Matheis acted arbitrarily and capriciously in his individual capacity, was deliberately indifferent to and adopted a reckless attitude toward the unnecessary destruction caused by the EPA and its agents at the Polymer Site. Such destruction allegedly included disposal of valuable

resin inventory. According to Defendants/Third–Party Plaintiffs, Matheis's actions were undertaken in bad faith and in furtherance of his own personal objective of attempting to inflict sufficiently great economic damage to ensure that Polymer was never able to resume operations.

### DISCUSSION

1. *Motion to Strike Defendants/Third–Party Plaintiffs' Affirmative Defenses*

Plaintiff moves under Fed.R.Civ.P. 12(f) to strike four of Defendants/Third–Party Plaintiffs' five affirmative defenses on the basis that they are insufficient as a matter of law. Specifically, Plaintiff maintains that Defendants/Third–Party Plaintiffs' affirmative defenses. are legally insufficient as they do not conform to any of the expressly enumerated defenses to liability under CERCLA § 107(b), they are barred by the doctrine of collateral estoppel, or that they are otherwise without legal basis. Memorandum of Law in Support of Plaintiff's Motion to Strike the Defendants/Third–Party Plaintiffs' Affirmative Defenses (Doc. # 18), filed December 19, 1997 ("Memorandum of Law in Support of Motion to Strike"), at 2. Defendants/Third–Party Plaintiffs argue in opposition that striking their affirmative defenses, none of which they assert are totally lacking of merit, would not expedite the litigation. Defendants and Third–Party Plaintiffs' Memorandum in Opposition to Government's and Kevin Matheis's Motion to Dismiss Counterclaims and Third–Party Complaint and to Strike Affirmative Defenses (Doc. # 21), filed January 13, 1998 ("Memorandum of Law in Opposition to Motions to Strike and Dismiss"), at 27.

■ Fed.R.Civ.P. 12(f) provides that "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). A motion to strike an affirmative defense, however, is generally not favored particularly when it requires determination of disputed or substantial issues of law prior to discovery. *William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir.1984), *vacated on other grounds,* 478 U.S. 1015, 106 S.Ct. 3324, 92 L.Ed.2d 731 (1986). An affirmative defense should not be stricken on a Rule 12(f) motion unless "the matter is impertinent and immaterial, it is settled that the motion will be denied, unless it can be shown that no evidence in support of the allegation would be admissible," *i.e.,* that the defense is totally insufficient as a matter of law. *Lipsky v. Commonwealth United Corporation,* 551 F.2d 887, 893 (2d Cir.1976)(citing *Gleason v. Chain Service Restaurant,* 300 F.Supp. 1241 (S.D.N.Y.1969), *aff'd,* 422 F.2d 342 (2d Cir.1970)); *Fleischer v. A.A.P., Inc.,* 180 F.Supp. 717 (S.D.N.Y.1959); 2A MOORE'S FEDERAL PRACTICE p. 12–21(1) (2d ed.1975)). "Thus the courts should not tamper with the pleadings unless there is a strong reason for so doing." *Lipsky, supra* (citing *Nagler v. Admiral Corp.,* 248 F.2d 319, 325 (2d Cir.1957)); (*Atlantic City Electric Co. v. General Electric Co.,* 207 F.Supp. 620, 623 (S.D.N.Y.1962)). Further, should the court choose to strike an affirmative defense, leave is generally granted to file an amended pleading that conforms to the requirements of Fed.R.Civ.P. 8. *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988)(citing 5 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1281, at 366–67; 2A MOORE'S FEDERAL PRACTICE p. 8.13, at 8–81 to 8–82 n. 38.

■ Initially, Plaintiff asserts that Defendants/Third–Party Plaintiffs' first four affirmative defenses should be stricken as they do not conform to CERCLA § 107(b), 42 U.S.C. § 9607(b), which enumerate the only defenses to liability under CERCLA § 107(a), 42 U.S.C. § 9607(a). Memorandum of Law in Support of Motion to Strike at 8. Defendants/Third–Party Plaintiffs argue that, in addition to the explicitly recognized statutory defenses available under 42 U.S.C. § 9607(b), there is another impliedly recognized, defense to CERCLA liability, namely, a defense which raises factual questions as to whether the response activities for which cost recovery is sought meet the criteria imposed under the requirement of 42 U.S.C. § 9607(a) that such activities "be consistent with the national contingency plan" and qualify as either "costs of removal or remedial

activities" or "other necessary costs of response." Memorandum of Law in Opposition to Motions to Strike and Dismiss at 28–29. Defendants/Third–Party Plaintiffs maintain that most of the EPA's activities at the Polymer Site were unnecessary and wasteful and, as such, do not qualify as recoverable expenses. *Id.* Plaintiff has not responded further to this claim. In support of their contention, Defendants/Third–Party Plaintiffs rely on *United States v. American Color,* 858 F.Supp. 445 (M.D.Pa.1994).

In *American Color, supra,* the court held that defendants to a CERCLA cost recovery action may assert as an affirmative defense that the actions undertaken by Plaintiff in connection with CERLCA cleanup operations were not consistent with the CERCLA's national contingency plan as established under 42 U.S.C. § 9607(a)(4)(A). *American Color, supra,* at 454. Therefore, the court stated that an affirmative defense against the defendants, rather than a counterclaim, was the proper procedure to challenge CERCLA cost-recovery claims filed by Plaintiff. *American Color, supra.* (citing *United States v. Western Processing Company,* 761 F.Supp. 725, 729 (W.D.Wash.1991)). *See also, In re Paoli Railroad Yard PCB Litigation,* 790 F.Supp. 94, 97 (E.D.Pa.1992)("It is clear from the statutory language [of 42 U.S.C. § 9607] that Congress envisioned that the propriety of cleanup conduct be judged solely by the 'not inconsistent' standard as part of EPA's cost recovery action.")

As such, insofar as Defendants/Third–Party Plaintiffs' affirmative defenses challenge the costs which Plaintiff claims are recoverable in the instant CERCLA recovery action, such affirmative defenses are not legally insufficient and should not be stricken on that ground. Accordingly, the court now examines whether any of Defendants/Third–Party Plaintiffs' affirmative defenses should be struck on other grounds.

### A. *Defendants/Third–Party Plaintiffs' First Affirmative Defense*

■ Defendants/Third–Party Plaintiffs assert as their first affirmative defense that they are exempt from liability under CERCLA as the alleged releases of hazardous substances at the Polymer Site were caused either by (1) a fire at the Polymer Site in 1988, (2) an act or omission by a third party, or (3) acts or omissions by the DEC and the EPA during their occupation of the Polymer Site in connection with the cleanup activities. Amended Answer, ¶¶ 29–36. Defendants/Third–Party Plaintiffs argue that as this claim tracks the language of 42 U.S.C. § 9607(b) it is legally sufficient. Memorandum of Law in Opposition to Motions to Strike and Dismiss at 30. Otherwise, Defendants/Third–Party Plaintiffs argue that such defense should be stricken with leave to replead. *Id.*

Plaintiff opposes this affirmative defense on the basis that it does not allege that the "release or threat of release of a hazardous substance and the damages resulting therefrom were cause *solely* by—(1) an act of God; (2) an act of war; (3) an act or omission of a third party other than an employee or agent of the defendant ... or any combination of the foregoing." Memorandum of Law in Support of Motion to Strike at 10 (quoting 42 U.S.C. § 9607(b))(emphasis added). Further, Plaintiff asserts that a defense is available under 42 U.S.C. § 9607(b) only if Defendants/Third-Party Plaintiffs also allege that they (1) exercised due care with respect to all hazardous substances concerned under all relevant circumstances at the Polymer Site, and (2) took precautions against foreseeable acts or omissions of third persons and all reasonably foreseeable results and consequences. Memorandum of Law in Support of Motion to Strike at 11 (citing 42 U.S.C. § 9607(b)).

■ The court's careful review of Defendants/Third–Party Plaintiffs' first affirmative defense reveals that it is legally insufficient as it fails to allege either that the releases or threats of releases of hazardous substances resulted *solely* from the causes enumerated under 42 U.S.C. § 9607(b). Additionally, Defendants/Third–Party Plaintiffs have not specifically alleged either that they exercised the requisite due care or took the necessary precautions to sustain a legally sufficient affirmative defense under 42 U.S.C. § 9607(b). However, it cannot be determined from the papers that Defendants/Third–Party Plain-

tiffs will not be able to replead such defense in a legally sufficient manner. As such, Defendants/Third–Party Plaintiffs' first affirmative defense should be stricken as legally insufficient with leave to replead. *Salahuddin, supra,* 861 F.2d at 42.

**B. Defendants/Third–Party Plaintiffs' Second and Third Affirmative Defenses**

■ Defendants/Third–Party Plaintiffs assert as their second affirmative defense that "any release that occurred at the [Polymer S]ite" would be a "release which results in exposure to persons solely within a workplace ..." and, therefore, not within Plaintiff's § 107 claim. Amended Answer, ¶ 38. Further, Defendants/Third–Party Plaintiffs assert as their third affirmative defense that Plaintiff's claim that there was a "threat of release" at the Polymer Site based on Defendants/Third–Party Plaintiffs' abandonment of "large quantities of flammable, corrosive and toxic substances stored in above-ground storage tanks, 55–gallon drums, and laboratory bottles containing hazardous substances" is without merit as Defendants/Third–Party Plaintiffs never "abandoned" the Polymer Site but, rather, were forcibly shut down by the DEC's classification of it as a hazardous waste site and the DEC's subsequent "forcible occupation" of the premises. Amended Answer, ¶ 40. Defendants/Third–Party Plaintiffs further alleged that except for phenol, the amount of the hazardous substances detected at the Polymer Site were "minute" and that Matheis therefore attempted to justify the EPA's cleanup of the Polymer Site by declaring the resins themselves as "hazardous substance containing materials," ignoring the fact that such materials had, through the resin manufacturing process, become chemically inert and, according to Defendants/Third–Party Plaintiffs, non-hazardous. Amended Answer, ¶¶ 42–43.

Plaintiff seeks to strike these affirmative defenses on the basis that they are collaterally estopped by Judge Arcara's determination in *United States v. Kevan Green and Polymer Applications, Inc.,* Docket No. 96–CV–338A(F) ("§ 104(e) action")(an action by which the United States seeks access to private property to test for the presence of suspected hazardous substances) that there had been a release or threat of release of a hazardous substance at the Polymer Site. Memorandum of Law in Support of Motion to Strike at 14.

■ The doctrines of res judicata (claim preclusion) and collateral estoppel (issue preclusion) bars the relitigation of matters which the parties have already had a full and fair opportunity to litigate in a prior action. *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). In *Levy v. Kosher Overseers Association of America, Inc.,* 104 F.3d 38 (2d Cir.1997), the court stated four separate but related factors which must be considered in determining whether an issue is barred from further litigation under collateral estoppel based on a prior proceeding, as follows

(1) the issues in both proceedings must be identical, (2) the issue in the prior proceeding must have been actually litigated and actually decided, (3) there must have been a full and fair opportunity for litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits.

*Levy, supra,* at 41 (quoting *Gelb v. Royal Globe Ins. Co.,* 798 F.2d 38, 44 (2d Cir.1986)). Applying these criteria to the allegations at issue,, the court finds that Defendants/Third–Party Plaintiffs are collaterally estopped from litigating their second and third affirmative defenses.

The first criteria requires that the issue in the prior proceeding be identical to the issue in the later proceeding. *Levy, supra* at 41. In the § 104(e) action, the EPA sought court-ordered access onto the Polymer Site to enable cleanup and removal of hazardous substances which had been released or were threatened to be released into the environment. Defendants/Third–Party Plaintiffs' second and third affirmative defenses are predicated on allegations that no such cleanup or removal activities were necessary as there was no release or threat of release within the meaning of CERCLA. The court observes that Defendants/Third–Party Plaintiffs do not, by their second and third affir-

mative defenses, challenge the decisions made or the methods employed by the EPA and its agents in conducting the removal activity at the Polymer Site. If they had, in accordance with *American Color, supra,* such affirmative defense may be legally sufficient under 42 U.S.C. § 9607(a)(4)(A). Instead, Defendants/Third–Party Plaintiffs's second and third affirmative defenses challenge the factual need for the EPA's removal activities at the Polymer Site, which was the same issue before Judge Arcara in the § 104(e) action. Accordingly, the first criteria for application of the doctrine of collateral estoppel, identity of issues, has been met.

As to the second criteria, a review of the court file in the § 104(e) action indicates that the issues as to whether there was a release or threat of release of hazardous substances into the environment were litigated in that prior action. Further, in the § 104(e) action, Judge Arcara rendered a decision which granted the EPA authority to access the Polymer Site to take response actions under CERCLA within the meaning of 42 U.S.C. § 9607(e)(1) as the EPA had demonstrated that its determination that there was a release or threat of release of a hazardous substance at the Polymer Site was not arbitrary or capricious. To reach the conclusion that the EPA acted properly in determining there was a basis for its § 104(e) action, Judge Arcara necessarily found a release or threatened release had occurred. Otherwise, the EPA action would have been baseless. Thus, the factual allegations contained in Defendants/Third–Party Plaintiffs' affirmative defenses raise the same questions adjudicated in the § 104(e) action, and the same evidence supports the second and third affirmative defenses as was submitted in opposition to the § 104(e) action, and the essential facts of the second and third affirmative defenses were presented in the previously adjudicated claim. *Levy, supra,* at 41. Such a determination would not be made unless the court also determined the release involved a hazardous substance. *See United States v. Kevan Green and Polymer Applications, Inc.,* No. 96–CV–338A(F), slip op. at 3–4 (W.D.N.Y.Aug.29, 1996). The second criteria for collateral estoppel to apply is thus met.

With regard to the third criteria, the court finds that Defendants/Third–Party Plaintiffs had a full and fair opportunity to litigate these issues in the § 104(e) action. Defendants/Third–Party Plaintiffs urge that this court not apply the doctrine of collateral estoppel as in the § 104(e) action, Defendants/Third–Party Plaintiffs were not presented with an opportunity "to brief" any of the issues relating to whether there had been a release or threat of release within the meaning of CERCLA § 101(a), 42 U.S.C. § 9601(a). Memorandum of Law in Opposition to Motions to Strike and Dismiss at 31. However, Plaintiff asserts that extensive briefs and affidavits on this issue were filed by the parties in the § 104 action. Memorandum of Law in Support of Motion to Strike at 15. A review of the court file in the § 104(e) action reveals that Defendants/Third–Party Plaintiffs not only challenged the EPA's request for an order granting access to the Polymer Site in connection with the CERCLA cleanup activities and that Defendants/Third–Party Plaintiffs also extensively briefed these same issues in the § 104 action through memoranda of law (Docket Items Nos. 7, 8 and 18) along with a declaration by Green (Docket Item No. 4). As such, Defendants/Third–Party Plaintiffs' argument that they were denied the opportunity to brief any of the issues relating to whether there had been a release or threat of release within the meaning of CERCLA is without merit.

As to the fourth criteria, the court finds that resolution in the § 104(e) action of the issues contained in the second and third affirmative defenses support a valid and final judgment on the merits. Specifically, Judge Arcara's held that "the determination made by the EPA that there has been a release or threatened release of hazardous substances at the [Polymer] Site is not arbitrary and capricious, not an abuse of discretion, and is not otherwise contrary to law within the meaning of § 104(e)(5)(B) of CERCLA, 42 U.S.C. § 9604(e)(5)(B)." *United States v. Kevan Green and Polymer Applications, Inc.,* Docket No. 96–CV–338A(F), slip op. at 3 (W.D.N.Y. Aug. 29, 1996). Such determinations are not further reviewable. *See J.V. Peters & Co., Inc. v. Ruckelshaus,* 584

F.Supp. 1005, 1009 (N.D.Ohio 1984), *aff'd*, 767 F.2d 263 (6th Cir.1985)(once the EPA commences a CERLCA response action, owners and operators of the subject site become potentially liable for the response costs and, as such, liability can only be avoided by challenging the response action before it is commenced).[6]

Hence, the court finds these affirmative defenses are precluded by collateral estoppel. Accordingly, Plaintiff's motion to strike Defendants/Third–Party Plaintiffs' second and third affirmative defenses should be GRANTED.

### C. *Motion to Strike Fourth Affirmative Defense*

■ Defendants/Third–Party Plaintiffs' fourth affirmative defense asserts that Green, "despite his ownership and effective control over Polymer, did not engage in any kind of wrongdoing or unlawful activity that would justify imposing liability on him personally for any acts or omission of Polymer." Amended Answer, at 44. Plaintiff maintains that it is not necessary to establish that Green was personally engaged in any unlawful activity to impose personal liability on him under CERCLA § 107(a), 42 U.S.C. 9607(a). Memorandum of Law in Support of Motion to Strike at 18. Plaintiffs also note that Green has admitted he is the current President, shareholder and Treasurer of Polymer, and "[i]t is well established in this circuit that corporate officers may be liable as 'operators' under CERCLA if they exercise sufficient control over and are involved in the activities of a company." *Id.*

Liability for the costs of removal and cleanup under CERCLA is established as to owners and operators of a facility under § 107(a) which provides in relevant part

[n]otwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—

(1) the owner and operator of a vessel or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of

\* \* \* \* \* \*

shall be liable for [all removal and remediation costs consistent with the National Contingency Plan.]

42 U.S.C. § 9607(a).

Under CERCLA an "owner or operator" is defined to mean "any person owning or operating" an onshore facility, 42 U.S.C. § 9601(20)(A), and the term "person" includes individuals as well as corporations, 42 U.S.C. § 9601(21).

Although a plain reading of § 9607(a)(1) would afford the conjunction "and" its expected conjunctive effect such that CERCLA cleanup cost liability would attach only to persons who are *both* the owner *and* operator of a facility where the release or threat of release is based on other than disposal activity, the trend in the law is to give the conjunction a *disjunctive* interpretation. *United States v. Fleet Factors Corp.*, 901 F.2d 1550, 1554, n. 3 (11th Cir.1990)(construing phrase "owner and operator" as found in 42 U.S.C. § 9607(a)(1) in the disjunctive based on interpretations of other courts, legislative history of CERCLA indicating it was "hastily drafted and adopted [legislation], with resulting ambiguities", failure to perceive any rational explanation to hold otherwise, and fact that CERCLA's definitional section defines only the phrase "owner or operator")(internal citations omitted). *See Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1497–98 (11th Cir.1996)(refusing to disregard reasoning set forth in *Fleet Factors, supra,* for giving disjunctive interpretation to conjunction); *Idylwoods Associates v. Mader Capital, Inc.*, 956 F.Supp. 410, 413

---

**6.** This finding is not inconsistent with the court's determination that Defendants/Third–Party Plaintiffs could still challenge the manner in which the EPA's remedial action was accomplished under 42 U.S.C. § 9607(a) which requires that such activities "be consistent with the national contingency plan" and qualify as either "costs of removal or remedial activities" or "other necessary costs of response." Specifically, the § 104(e) action was neither concerned with determining who is responsible for such cleanup, nor with whether the decisions made and methods employed in such cleanup were proper.

(W.D.N.Y.1997)(noting that in *Fleet Factors, supra,* the court construed that phrase " 'owner and operator of a facility as that individual or entity owning or operating that facility at the time the plaintiff initiated the lawsuit by filing a complaint' ")(quoting *Fleet Factors, supra,* at 1554). This issue has not been addressed by the Second Circuit.

Despite the fact that Green, by the affirmative defense at issue, has admitted ownership of Polymer, Plaintiff does not challenged the affirmative defense on the basis that Green could be found liable under CERCLA as either an owner *or* an operator of a facility; rather, Plaintiff argues only that it is irrelevant whether Green was personally involved in any "wrongdoing or illegal activity that would justify imposing liability on him personally." Memorandum of Law in Support of Motion to Strike at 18 (quoting Amended Answer, ¶ 14). Plaintiff relies on *State of New York v. Shore Realty Corp.,* 759 F.2d 1032 (2d Cir.1985). Memorandum of Law in Support of Motion to Strike at 18–19.

In *Shore, supra,* the court held that a stockholder who manages a corporation may be held personally liable as an "operator" under CERCLA, 42 U.S.C. § 9607(a), for response costs incurred by the state in connection with removal activity. In *Shore,* the court found that an individual stockholder of a corporation could be held personally responsible for the corporation's CERCLA liability as a *de facto* operator of the corporation without piercing the corporate veil. *Shore, supra,* at 1052. That decision was based on the court's interpretation of the phrase "owner or operator," as defined under 42 U.S.C. § 9601(20)(A), which excludes from liability "a person, who, without participating in the management of a ... facility, holds indicia of ownership primarily to protect his security interest in the facility," as implying that a shareholder who manages a corporation may be liable as an owner or operator. *Shore, supra,* at 1052. The court's finding was reached, however, without having distinguished between management of a corporation's financial aspects and management of the corporation's facility.

However, in *United States v. Bestfoods,* 524 U.S. 51, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998), the Supreme Court recently considered this issue in the context of whether the corporate veil could be pierced to hold a parent corporation responsible for liability imposed against its wholly-owned subsidiary following a CERCLA cost recovery action. In that case, the Supreme Court held that in determining whether a stockholder may be held liable under CERCLA as an owner or operator of a facility, consideration must be given, in accordance with fundamental corporation law, to whether such stockholder's management of a corporation requires actions beyond those which are incident to the legal status of stockholders, such as election of directors, and the establishment of by-laws. *Bestfoods, supra,* at 1884. The Court further found that "nothing in CERCLA purports to reject this bedrock principle, and against this venerable common-law backdrop, the congressional silence is audible." *Bestfoods, supra,* at 1885.

In *Bestfoods,* the Court further found that nothing in CERCLA abrogates the necessity of piercing the corporate veil in order to hold a shareholder derivatively liable for CERCLA cleanup costs incurred based on a corporation's actions. *Bestfoods, supra,* at 1886. Specifically, the court determined that "under CERCLA, an operator is simply someone who directs the workings of, manages, or conducts the affairs of a facility. To sharpen the definition for purposes of CERCLA's concern with environmental contamination, an operator must manage, direct, or conduct operations specifically related to pollution, that is, operations having to do with the leakage *or* disposal of hazardous waste, or decisions about compliance with environmental regulations." *Bestfoods, supra,* at 1887 (emphasis added). Accordingly, Green may not be found liable under the instant CERCLA cost recovery action as an operator of the Polymer facility unless he directly participated in the management of the facility's pollution control operations including decisions pertaining to the disposal of hazardous substances and compliance with environmental regulations so as to expose himself to liability as an operator under § 107. *Bestfoods, supra,* at 1887.

In the instant case, although Green admits that he owned and exercise control over Polymer, Plaintiff does not challenge the Fourth Affirmative Defense on the basis that Green may be held liable as either an owner or an operator. Further, the court construes Green's assertion that he was not personally involved "in any kind of wrongdoing or illegal activity that would justify imposing liability on him personally for any acts of omissions of Polymer," Amended Answer, ¶ 44, as a denial of the type of activity required under *Bestfoods, supra,* to impose CERCLA liability as an operator. Significantly, Green does not admit that he was involved in managing, directing or conducting any operations specifically related to pollution or the leakage or disposal of hazardous wastes at Polymer or which would support piercing the corporate veil to hold him personally liable as an operator. As such, Defendants/Third–Party Plaintiffs' fourth affirmative defense is legally sufficient. Accordingly, the Government's motion to strike Defendants/Third–Party Plaintiffs' fourth affirmative defense should be DENIED.

In summary, Plaintiff's motion to dismiss Defendants/Third–Party Plaintiffs' affirmative defenses should be (1) GRANTED as to the first affirmative defense with leave to replead, (2) GRANTED as to the second and third affirmative defenses, and (3) DENIED as to the fourth affirmative defense.

### 1. *Motion to Dismiss Defendants/Third–Party Plaintiffs' Counterclaim*

Defendants/Third–Party Plaintiffs assert against Plaintiff a counterclaim for property damage and conversion of assets on the basis that the management actions of the EPA and its agents during their removal activity at the Polymer Site from March 1994 until December 1996 were grossly negligent. Amended Complaint, ¶¶ 49–55. Specifically, Defendants/Third–Party Plaintiffs claim that the EPA and its agents were deliberately indifferent to security breaches at the Polymer Site insofar as they refused to permit Polymer's guard to patrol the perimeter of the Polymer Site to discourage break-ins and vandalism, unreasonably delayed the installation of flood lights for over one year, refused

to install security surveillance, and refused to repair or to permit others to repair, broken windows in the Plant, thereby facilitating illegal entry into the buildings located at the Polymer Site. Amended Answer, ¶ 51.

Defendants/Third–Party Plaintiffs also allege that the EPA and its agents purposely and frivolously dismantled portions of the Plant's facilities and discarded valuable equipments without any CERCLA regulatory basis. Amended Answer, ¶ 52. Further, according to Defendants/Third–Party Plaintiffs, the EPA refused to make simple repairs to the Plant to prevent any risk of leakage of materials on the basis that it was barred under applicable EPA regulations from taking any action which could assist a business that was seeking to reopen. *Id.*

Defendants/Third–Party Plaintiffs also maintain that the grossly negligent actions of the EPA and its agents constituted deliberate indifference to the economic harm which was arbitrarily and capriciously inflicted on Polymer, resulting in damage to various pieces of Polymer's resin manufacturing equipment. *Id.* at ¶ 53. Finally, Defendants/Third–Party Plaintiffs claim that the EPA and its agents unnecessarily prolonged the amount of time it occupied the Polymer Site, thus delaying Polymer from resuming operations. *Id.* at ¶¶ 54–55. Plaintiff seeks to dismiss Defendants/Third–Party Plaintiffs' counterclaim pursuant to Fed.R.Civ.P. 12(b)(1) for lack of jurisdiction and, under Fed.R.Civ.P. 12(b)(6), for failure to state a claim.

### A. *Compulsory or Permissive Counterclaim*

First, Plaintiff contends that as the counterclaim alleges negligent actions, it sounds in tort and, as such, must be dismissed for want of jurisdiction as it is a permissive counterclaim for which Defendants/Third–Party Plaintiffs have not exhausted administrative remedies. Memorandum of Law in Support of United States' Motion to Dismiss Counterclaim for Lack of Subject Matter Jurisdiction and Failure to State a Claim (Doc. # 19), filed December 19, 1997 ("Memorandum of Law in Support of Motion to Dismiss Counterclaim"), at 8. De-

fendants/Third–Party Plaintiffs contend that their counterclaim qualifies as a compulsory counterclaim under Fed.R.Civ.P. 13(a) and, as such, they were not required to exhaust administrative remedies before asserting the counterclaim. Upon consideration of the submissions, the court finds the counterclaim is not compulsory and, as a permissive counterclaim, should be dismissed based on Defendants/Third–Party Plaintiffs' failure to exhaust administrative remedies.

Claims which sound in tort are actionable against the United States, if at all, only under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.* However, prior to commencing suit against the United States under the FTCA, a claimant must present an administrative claim to the appropriate agency, and such administrative claim must "have been finally denied by the agency in writing ...." 28 U.S.C. § 2675(a). Failure to comply with the administrative scheme is jurisdictional and cannot be waived. *Keene v. United States,* 700 F.2d 836, 840 (2d Cir.), *cert. denied,* 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983)(citing *House v. Mine Safety Appliances Co.,* 573 F.2d 609, 617 (9th Cir.), *cert. denied,* 439 U.S. 862, 99 S.Ct. 182, 58 L.Ed.2d 171 (1978)). Further, as the FTCA constitutes a waiver of sovereign immunity, the administrative scheme set forth in § 2675 must be strictly applied. *Keene, supra* (citing *Three–M Enterprises, Inc. v. United States,* 548 F.2d 293, 295 (10th Cir.1977)); and *Brown v. General Services Administration,* 507 F.2d 1300, 1307 (2d Cir.1974), *aff'd,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). The administrative claim prerequisite does not apply to claims asserted "by third-party complaint, cross-claim, or counterclaim." 28 U.S.C. § 2675(a). However, this administrative claim exception applies only to counterclaims which are compulsory. *United States v. Contents of Account Number 16080093887,* 1993 WL 541656, *1 (S.D.N.Y.1993)(citing *See, e.g., Spawr v. United States,* 796 F.2d 279, 281 (9th Cir.1986)); *Northridge Bank v. Community Eye Care Center, Inc.,* 655 F.2d 832, 836 (7th Cir.1981); *Frederick v. United States,* 386 F.2d 481, 488 (5th Cir.1967); *United States v. Amtreco, Inc.,* 790 F.Supp. 1576, 1579 (M.D.Ga.1992); *United States v.*

*Martech USA, Inc.,* 800 F.Supp. 865, 866 (D.Alaska 1992); *United States v. Taylor,* 342 F.Supp. 715, 717 (D.Kan.1972). Thus, the procedural requirements of § 2675(a) do not apply to compulsory counterclaims.

Whether a counterclaim is compulsory is determined under Fed.R.Civ.P. 13(a), which provides

[a] pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction....

Fed.R.Civ.P. 13(a).

Further, a compulsory counterclaim which is not brought is forever barred. *Baker v. Gold Seal Liquors, Inc.,* 417 U.S. 467, 469, 94 S.Ct. 2504, 41 L.Ed.2d 243 (1974).

Whether counterclaims are compulsory as defined by Fed.R.Civ.P. 13(a) depends on whether they arise out of the same transaction or occurrence upon which a plaintiff's complaint is based. *Federman v. Empire Fire and Marine Insurance Co.,* 597 F.2d 798, 811 (2d Cir.1979). The Supreme Court has defined "transaction" in the context of a compulsory counterclaim as "a word of flexible meaning .... [which] may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Moore v. New York Cotton Exchange,* 270 U.S. 593, 610, 46 S.Ct. 367, 70 L.Ed. 750 (1926). Additionally, in determining whether a counterclaim is compulsory, consideration must be given to "whether a logical relationship exists between the claim and the counterclaim and whether the essential facts of the claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Adam v. Jacobs,* 950 F.2d 89, 92 (2d Cir.1991)(internal quotations omitted). The factors most generally considered "as indicators of the compulsory nature of a claim are: (1) identity of facts between original claim and counterclaim; (2)

mutuality of proof; (3) logical relationship between original claim and counterclaim." *Federman, supra,* at 812.

In the instant case, Plaintiff maintains that the CERLCA cost recovery action involves different factual and legal issues than those raised in Defendants/Third–Party Plaintiffs' counterclaim. Memorandum of Law in Support of Motion to Dismiss Counterclaim at 12. Specifically, Plaintiff contends that the CERCLA action involves application of federal environmental law and a factual inquiry as to the persons responsible for placing hazardous substances at the Polymer Site during a specific time period, requiring Plaintiff only to demonstrate that, as defined under CERCLA, the Polymer Site is a "facility" and that a "release or threatened release" occurred at the Polymer Site, causing the United States to incur "response costs," which are essentially equitable claims for restitution, and that both Green and Polymer are covered "persons." Memorandum of Law in Support of Motion to Dismiss Counterclaim at 13. Further, Plaintiff contends that Defendants/Third–Party Plaintiffs' counterclaim is based on New York common law and factual inquiries involving the alleged negligence of the EPA and its agents during the subsequent remediation and clean-up of the Polymer Site. Memorandum of Law in Support of Motion to Dismiss Counterclaim at 12–13. In contrast, Defendants/Third–Party Plaintiffs argue that their counterclaim is compulsory as "the facts that will determine the success or failure of Plaintiff's 'restitution' claim will also determine in an inverse manner the success of failure of the Counterclaim." Memorandum of Law in Opposition to Motions to Strike and Dismiss at 15.

Here, Plaintiff's claims arose out of events which occurred at the Polymer Site prior to either the DEC's or the EPA's involvement. Specifically, Plaintiff's claims are concerned with determining the amount of the cleanup costs as well as who is responsible for placing the hazardous substances at the Polymer Site as such persons are responsible, under CERCLA, for payment of the costs of removal and remediation incurred. 42 U.S.C. § 9607(a). Defendants/Third-Party Plain-

tiffs's claims, however, arose out of the alleged negligent actions of the EPA and its agents in performing removal and remediation activities at the Polymer Site in a manner which resulted in the destruction of Polymer's manufacturing equipment as well as property damage to the premises. Such activities occurred *after* the events which form the basis of Plaintiff's CERCLA cost recovery claim. Further, Defendants/Third–Party Plaintiffs admit that such alleged negligent actions occurred not in connection with the EPA's remediation efforts but, rather, "without any valid regulatory basis and for frivolous reasons." Amended Answers, ¶ 52.

Based on relevant caselaw, this relationship between the acts underlying the need for remediation and the conduct of such cleanup activity is too attenuated to demonstrate that the counterclaims are compulsory. *See, e.g., Computer Associates International, Inc. v. Altai, Inc.,* 893 F.2d 26 (2d Cir.1990)(counterclaims arising out of the filing of the main action and subsequent events are not compulsory counterclaims within the meaning of Rule 13(a)); *Federman v. Empire Fire and Marine Insurance Company,* 597 F.2d 798 (2d Cir.1979)(counterclaims are not compulsory where factual basis of counterclaims primarily concerns events subsequent and unrelated to the factual basis underlying the original complaint); *Harris v. Steinem,* 571 F.2d 119 (2d Cir.1978)(no logical relationship between filing of the main action and the subsequent alleged defamations); *Manway Construction Co., Inc., supra,* (counterclaim is not compulsory where factual basis for counterclaim concerns primarily events subsequent to and unrelated to the events underlying the original complaint). *Compare Moore v. New York Cotton Exchange, supra* (counterclaim was compulsory where the failure of the original complaint would establish a foundation for the counterclaim); *Crouse–Hinds Company v. InterNorth, Inc.,* 634 F.2d 690 (2d Cir.1980)(the consummation of a proposed merger agreement was the one link on which both the original claim and counterclaim were based, the counterclaim was compulsory as the original claim sought to further the consummation of the proposed merger agreement, while the counterclaim sought to thwart it).

That Defendants/Third–Party Plaintiffs' counterclaim is not· logically related to the complaint is further demonstrated by the fact that no such counterclaim could have been alleged when the original CERCLA clean-up response commenced on March 14, 1994 as the events out of which these counterclaims accrued had not yet occurred. Additionally, an action based on these counterclaims could have been commenced even if Plaintiff had never filed the instant cost recovery action. Further, the disposition of Plaintiff's complaint has no bearing on the disposition of these counterclaims; even if Plaintiff succeeds, such would not preclude a finding that the counterclaim had merit.

Specifically, the key issues to be determined on Plaintiff's § 107 action are whether Defendants/Third–Party Plaintiffs are owners or operators of the Polymer Site and whether the cleanup actions were consistent with the national plan and the amount of such cleanup costs. Plaintiff's success on both issues is irrelevant to whether the cleanup work was performed in a tortious manner. Even if Defendants/Third–Party Plaintiffs' claims were successful, such would not legally negate the validity of the Plaintiff's success on its § 107 claim. Defendants/Third–Party Plaintiffs may be correct, but that determination also could stand on its own regardless of the outcome of Plaintiff's § 107 action. Defendants/Third–Party Plaintiffs may well have a viable counterclaim, but it is a permissive one. Thus, none of these counterclaims "arise[ ] out of the transaction or occurrence that is the subject matter of the opposing party's [Plaintiff's] claim" and cannot qualify as compulsory counterclaims. Fed.R.Civ.P. 13(a).

Accordingly, Defendants/Third–Party Plaintiffs's counterclaim is permissive, the administrative exhaustion requirement therefore applies, and as the required exhaustion has not been alleged, the counterclaim must be dismissed for lack of jurisdiction.

### B. *Discretionary Function Exception*

Alternatively, Plaintiff asserts that even if Defendants/Third–Party Plaintiffs' counterclaim is a compulsory counterclaim under the FTCA, it must nevertheless be dismissed for lack of subject matter jurisdiction and for failing to state a claim based on the discretionary function and independent contractor exceptions to the FTCA's limited waiver of sovereign immunity in tort. Memorandum of Law in Support of Motion to Dismiss Counterclaim at 16; Plaintiff's Reply Memorandum of Law in Support of United States' Motion to Dismiss Counterclaim for Lack of Subject Matter Jurisdiction and Failure to State a Claim ("Plaintiff's Reply in Support of Motion to Dismiss Counterclaim") (Doc. # 26), filed February 25, 1998 at 4.

Plaintiff's sovereign immunity from suit under the FTCA is not waived with regard to

[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based ·upon the exercise or performance or the failure to exercise or perform a discretionary . function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

This exception covers only acts that are discretionary in nature, acts that "involv[e] an element of judgment or choice," *United States v. Gaubert*, 499 U.S. 315, 325, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991)(quoting *Berkovitz v. United States*, 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988)), rather than "a run of the mill tort devoid of policy concerns." *Berkovitz, supra*, at 537, 108 S.Ct. 1954. "[I]t is the nature of the conduct, rather than the status of the actor" that governs whether the "exception applies." *Gaubert, supra*, at·322, 111 S.Ct. 1267 (quoting *United States v. Varig Airlines*, 467 U.S. 797, 813, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984)). As such, the challenged conduct must be considered in light of whether such conduct was undertaken as a matter of choice by the actor. *Berkovitz, supra*, at 536, 108 S.Ct. 1954. In *Berkovitz*, the Second Circuit established a two-prong test to determine whether the discretionary function exception to liability under the FTCA applies. First, the exception will not apply when "a federal statute, regulation, or policy specifically pro-

scribes a course of action for an employee to follow." *Berkovitz, supra,* at 536, 108 S.Ct. 1954. Second, provided the first prong has been met, the discretionary function exception will apply if the challenged action "is grounded in social, economic, and political policy." *Berkovitz, supra.*

 However, even "assuming the challenged conduct involves an element of judgment," it remains to be decided "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Gaubert, supra,* at 322–23, 111 S.Ct. 1267 (quoting *Berkovitz, supra,* at 536, 108 S.Ct. 1954). If decision-making authority has been delegated to an agency either by Congress or through a regulation, internal guideline or established policy, there is a strong presumption that any discretionary action taken thereunder was taken in accordance with such delegated authority. *Gaubert, supra,* at 324, 111 S.Ct. 1267. Moreover, the failure to allege specific facts regarding an agency employee's breach of specifically delegated decision-making authority is fatal to a claim under the FTCA. *Gaubert, supra,* at 324, 111 S.Ct. 1267 ("For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory scheme.").

 In support of its motion to dismiss the counterclaim for lack of subject matter jurisdiction based on the discretionary function exception to liability under the FTCA, Plaintiff submitted a Certification of Scope of Employment (Doc. 25), filed February 2, 1998, in which United States Attorney, Denise E. O'Donnell, certifies that Matheis was acting within the scope of his employment as a federal employee at all times relevant to this action. A set of eighteen exhibits to Plaintiff's Memorandum of Law in Support of Motion to Dismiss Counterclaim was also admitted detailing the actions undertaken by Matheis in the CERLCA remediation activity at the Polymer Site.[7] As such, Plaintiff maintains that the burden is now on Defendants/Third–Party Plaintiffs to demonstrate subject matter jurisdiction. Memorandum of Law in Support of Motion to Dismiss Counterclaim at 4 (citing *Mosseri v. FDIC,* 924 F.Supp. 605, 607 (S.D.N.Y. 1996)("Once challenged, the burden of establishing a federal court's subject matter jurisdiction rests on the party asserting jurisdiction.")).

 The court finds that Defendants/Third–Party Plaintiffs have not met their burden to establish jurisdiction over the counterclaim. Actions involving the exercise of discretion taken within the scope of an official's employment are presumed to be grounded in public policy and, as such, protected from suit in tort by the discretionary function exception. *Gaubert, supra,* at 325, 111 S.Ct. 1267. In this case, to establish jurisdiction, Defendants/Third–Party Plaintiffs would first have to point to some evidence which controverts the United States Attorney's certification that the actions of Matheis which Defendants/Third–Party Plaintiffs challenge were not taken within the scope of his employment and then demonstrate that such actions are not grounded in public policy. Defendants/Third–Party Plaintiffs have not, however, challenged either the Certification of Scope of Employment or Plaintiff's exhibits. Thus, Defendants/Third–Party Plaintiffs

---

**7.** The court notes that Defendants/Third–Party Plaintiffs have challenged the propriety of the court's consideration of such Certification and Exhibits on a motion to dismiss under Fed. R.Civ.P. 12(b)(6) as such a claim must be considered based on "the facts stated on the face of the complaint and documents appended to or incorporated into the complaint by reference, and to matters of which judicial notice may be taken." Memorandum of Law in Opposition to Motions to Strike and Dismiss at 2–3 (citing *Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40 (2d Cir. 1991)). However, the court is permitted to consider such information on a motion to dismiss for lack of subject matter jurisdiction. *Land v. Dollar,* 330 U.S. 731, 735, n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947)("when a question of the District Court's jurisdiction is raised, either by a party or by the court on its own motion, ... the court may inquire by affidavits or otherwise, into the facts as they exist"); *Kamen v. American Telephone and Telegraph Co.,* 791 F.2d 1006, 1010 (2d Cir.1986)(evidentiary material may be presented by affidavit or otherwise on challenge to subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1)).

have done nothing to meet their burden to establish jurisdiction over the counterclaim.

As the discretionary functions exception applies, then should the district judge find that the counterclaim is compulsory and thus exempt from the FTCA's exhaustion requirement the court finds Defendants/Third–Party Plaintiffs' counterclaim is nevertheless barred by the discretionary function doctrine and must be dismissed for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1).

### C. *Recoupment*

██ Alternatively, Defendants/Third–Party Plaintiffs assert that their counterclaim is for "recoupment" and, therefore is not a tort action and, as such, is not subject to the administrative claim requirements of the FTCA. Amended Complaint, ¶ 50. Plaintiff maintains that even if the counterclaim is considered as solely a claim for recoupment, it does not satisfy the prerequisites of a valid common law recoupment claim against the United States outside the defense of sovereign immunity and therefore must be dismissed for failure to state a claim. Memorandum of Law in Support of Motion to Dismiss Counterclaim at 8.

██ The jurisdictional limitations as to suits against the United States, based on sovereign immunity, apply to original actions as well as to counterclaims. *United States v. Forma*, 42 F.3d 759, 764 (2d Cir.1994). Jurisdiction for a suit against the United States does not exist unless there is a specific congressional authorization for it. *Forma, supra*, at 764. However, despite sovereign immunity, a defendant may recover on a recoupment counterclaim up to an amount equal to the principal amount claimed by the United States. *Forma, supra*. Accordingly, a counterclaim asserted against a sovereign as a recoupment may "defeat or diminish the sovereign's recovery." *Forma, supra* (quoting *United States v. Agnew*, 423 F.2d 513, 514 (9th Cir.1970)).

██ The common law equitable doctrine of recoupment permits a defendant to assert a defensive claim against a the United States, so long as such claim arises from the same contract or transaction as plaintiff's claim, to reduce the amount of the damages recoverable by the United States as plaintiff. *Berger v. City of North Miami*, 820 F.Supp. 989, 992 (E.D.Va.1993). It "is the common law precursor to the modern compulsory counterclaim." *Id.* (citing Fed.R.Civ.P. 13(a) and 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE, § 1401 (1990)). Thus, if recoupment applies, no independent waiver of sovereign immunity is required as recoupment rests on the principle that sovereign immunity should not prevent a private person from raising, in his or her defense, claims that arise from the same transaction or occurrence on which the government is seeking to recover damages. *Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 947 (Fed.Cir. 1993); *United States v. Iron Mountain Mines, Inc.*, 812 F.Supp. 1528, 1552 (E.D.Cal. 1992).

However, recoupment claims for damages arising from remediation activity have been held impermissible in a CERCLA action. *United States v. Rohm and Haas Company*, 939 F.Supp. 1157, 1162 (D.N.J.1996)(recognizing that the law regarding whether recoupment claims are permitted under CERCLA is "in a state of flux," but finding that "those cases which do not allow recoupment within the context of CERCLA are the more well reasoned decisions ...."); *United States v. Iron Mountain Mines, Inc.*, 881 F.Supp. 1432, 1454 (E.D.Cal.1995)(holding that common law recoupment claims against the United States are barred by the doctrine of sovereign immunity); *United States v. Keystone Sanitation Company, Inc.*, 867 F.Supp. 275, 284 (M.D.Pa.1994)("recoupment claims are counterclaims for damages caused by the EPA when it has acted in its sovereign capacity in cleaning up the [Superfund] site, and to allow the claim to go forward requires a waiver of sovereignty").

In *United States v. Iron Mountain Mines, Inc.*, 881 F.Supp. 1432, 1457 (E.D.Cal.1995) ("*Iron Mountain II*"), the court examined the essence of recoupment claims and determined that recognizing a recoupment claim against the United States or a state as part of a CERCLA cost recovery action was in-

herently inconsistent with CERCLA's purpose.

If the theory of recoupment is adopted in the context of a CERCLA action, the rather extraordinary exposure that results to governmental entities is evident. In the case of the federal government, suit under CERCLA would expose it to counterclaims under state tort law for any of its activities during the cleanup. Whereas CERCLA provides that certain actions of the federal government are to be reviewed under a negligence standard or under the arbitrary and capricious standard, state law could well impose strict liability or some other standard. See 42 U.S.C. §§ 9607(d)(1) & 9613(j)(2). A state entity would be exposed through recoupment to suit in federal court for state law claims that would normally be barred by the Eleventh Amendment and state sovereign immunity law. The same inconsistency with standards set out in CERCLA could well arise. See 42 U.S.C. § 9607(d)(2) (state government liable in an emergency only for gross negligence). Although CERCLA waives sovereign immunity for actions against governmental agencies who are responsible for environmental injury, and subjects them as well to claims for contribution, there is nothing in CERCLA that addresses a recoupment remedy or suggests that by bringing a CERCLA action a government agency exposes itself to claims under other state or federal statutory and common law schemes as to which it would otherwise be immune from suit. Can this far reaching result have been intended by Congress in the enactment of CERCLA?

*Iron Mountain II, supra,* at 1453–1454 (internal footnotes omitted).

■ It is significant that in *Iron Mountain II,* the court recognized that recoupment claims had been allowed by other courts, including that court in a prior order issued in the same case. *See United States v. Iron Mountain Mines, Inc.,* 812 F.Supp. 1528, 1552 (E.D.Cal.1992)("*Iron Mountain I*"). However, even in *Iron Mountain I,* the court recognized that a recoupment claim is recognized as an independent claim and, as such, must be asserted as a challenge to CERCLA's National Contingency Plan, a defense specifically created by CERCLA. *Iron Mountain I, supra,* at 1552. Nor does the preclusion of recoupment claims under CERCLA exempt the government from liability based on further releases which may occur based on the government's negligence in undertaking the cleanup and remediation process. *Iron Mountain II, supra,* at 1448. In such case, CERCLA expressly provides for recovery from the government in its proportionate share. 42 U.S.C. § 9607(d).

Moreover, the court notes that Defendants/Third–Party Plaintiffs are not without a remedy to hold the EPA liable for any damage it caused based on its own negligent actions in the course of the remediation activity at the Polymer Site. Specifically, as discussed, Defendants/Third–Party Plaintiffs could have availed itself of the administrative procedure established for such claims under the FTCA. The court therefore finds that Defendants/Third-Party Plaintiffs' counterclaim should be dismissed for lack of jurisdiction as recoupment claims are not permitted in a CERCLA cost recovery action.[8]

**8.** This finding is not inconsistent with the Second Circuit's holding in *Forma, supra,* that a recoupment claims against the United States are permissible absent any statutory waiver of sovereign immunity, in an amount equal to the principal claim. Specifically, *Forma* relies on caselaw decided prior to *United States v. Dalm,* 494 U.S. 596, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990). In that case, the Supreme Court noted that it had upheld recoupment claims only in two other cases, *Bull v. United States,* 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935), and *Stone v. White,* 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265 (1937), both of which were stood "only for the proposition that a party litigating a tax claim in a timely proceeding may, in that proceeding, seek

recoupment of a related, and inconsistent, but now time-barred tax claim relating to the same transaction." *Dalm, supra,* at 1368. Unless such offset were permitted, the taxpayer in *Bull* would have been taxed twice on the same transaction based on inconsistent characterizations of such transaction. *Bull, supra,* at 262, 55 S.Ct. 695. Further, in *Stone, supra,* recoupment was sought by the government and, as such, sovereign immunity was not implicated. It is significant that *Forma* is similar to *Bull, supra,* as *Forma* was an action involving the government's attempt to recover a tax deficiency and a recoupment claim to obtain a tax refund. Moreover, at issue in *Forma* was whether the ability to assert a taxpayer's recoupment claim in accordance with

■ Alternatively, should the district judge disagree and find that recoupment claims are viable counterclaims in a CERCLA cost recovery action, then Defendants/Third–Party Plaintiffs's recoupment claim should be dismissed as it fails to state a claim.

■ A valid claim for recoupment must (1) arise out of the same transaction on which Plaintiff's claim is based, (2) seek relief of the same kind and nature as is sought by Plaintiff, and (3) seek solely a defensive setoff, as opposed to an affirmative recovery, from Plaintiff. *See Forma, supra,* at 765; *United States v. Hardage,* 750 F.Supp. 1460, 1511 (W.D.Okla.1990), *rev'd on other grounds,* 982 F.2d 1436 (10th Cir.1992); *United States v. American Color,* 858 F.Supp. 445, 451–52 (M.D.Pa.1994).

Here, the court finds that Defendants/Third–Party Plaintiffs' counterclaim does not meet the criteria to state a claim for recoupment. For the reasons discussed, the claims asserted by Plaintiff in this CERCLA cost recovery action do not arise out of the same transactions as the claims asserted by Defendants/Third–Party Plaintiffs in their counterclaim. Further, while Plaintiff seeks restitution for the cost incurred in the removal and remediation of the pollution at the Polymer Site, Defendants/Third–Party Plaintiffs seek to recoup costs related not to the cleanup of pollution at the Polymer Site, but to the alleged negligent actions of the EPA and its agents in the cleanup operations. *Hardage, supra,* at 1519 (holding that defendants recoupment claim alleging that Government's actions undertaken in connection with remediation of CERCLA Superfund site did not arise out of the same set of transactions as those which prompted the EPA's cleanup activities at the site). Further, Plaintiff seeks an equitable remedy of restitution under federal law while Defendants/Third–Party Plaintiffs seek monetary damages under state tort law. *See United States v. Kramer,* 757 F.Supp. 397, 427 (D.N.J.1991)(where the government seeks equitable relief, the defendant is barred from

asserting equitable defenses)(citing *Violet v. Picillo,* 648 F.Supp. 1283, 1294 (D.R.I.1986)); *United States v. Conservation Chemical,* 619 F.Supp. 162, 205–206 (W.D.Mo.1985); *Mardan Corp. v. C.G.C. Music, Ltd.,* 600 F.Supp. 1049, 1056 n. 9 (D.Ariz.1984), *aff'd,* 804 F.2d 1454 (9th Cir.1986). Finally, the court finds that Defendants/Third–Party Plaintiffs' counterclaim is not solely defensive in nature. Significantly, as discussed, it could be brought as a separate action under state tort law. As such, Defendants/Third–Party Plaintiffs' counterclaim fails to state a claim for recoupment.

Accordingly, Plaintiff's motion to dismiss Defendants/Third–Party Plaintiffs' counterclaim for lack of jurisdiction based on failure to exhaust administrative remedies should be GRANTED as the counterclaim is not a compulsory counterclaim under the FTCA. Alternatively, should the district judge find the counterclaim is compulsory, Plaintiff's motion to dismiss for failure to state a claim should GRANTED for lack of jurisdiction based on the discretionary function doctrine. Alternatively, should the district judge find that the counterclaim is a claim for recoupment, Plaintiff's motion should be. GRANTED based on lack of jurisdiction as the court finds that recoupment claims are not permissible under CERCLA. Should the district judge disagree and find that recoupment claims are permissible under CERCLA, Plaintiff's motion to dismiss the recoupment counterclaim should be GRANTED for failure to state a claim.

### D. Motion to Dismiss Defendants/Third–Party Plaintiffs' Cross–Claims

Defendants/Third–Party Plaintiffs assert as a Third–Party claim against Kevin Matheis, the Polymer Site OSC, a claim under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), alleging that Matheis acted arbitrarily in his OSC capacity and ignored his responsibilities toward Green and Polymer by directing the activity which caused Defendants/Third–Par-

---

*Bull* provided a basis on which to obtain an affirmative recovery, *Forma, supra,* at 765, an issue not present in the instant action. To the

extent that *Forma* recognizes the existence of recoupment as the basis for recovery, it should correctly be limited to tax enforcement cases.

226

ty Plaintiffs to incur property damage, amounting to a taking in violation of the Fifth Amendment's Due Process Clause. Amended Answer, ¶ 58.

In *Bivens, supra,* the Supreme Court held that a federal cause of action for violation of a federally protected constitutional right, in *Bivens* a Fourth Amendment violation, was implied by the specific constitutional protection at issue allowing recovery of money damages against federal officers acting under color of federal law. The Supreme Court has also approved *Bivens* actions for unlawful takings in violation of the Fifth Amendment. *Davis v. Passman,* 442 U.S. 228, 248–49, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979). To establish a *Bivens* claim for relief, Defendants/Third–Party Plaintiffs must show "(1) that the challenged action was attributable at least in part to a person acting under color of federal law, and (2) that such conduct deprived the Plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States." *Flagg Bros. Inc. v. Brooks,* 436 U.S. 149, 155–56, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978).

■ Matheis maintains that Defendants/Third–Party Plaintiffs fail to state a *Bivens* claim based on an unlawful taking as such claim is premature unless and until the property owner has availed itself of the remedy afforded by the Tucker Act, 28 U.S.C. § 1491. Memorandum of Law in Support of Motion to Dismiss the Third–Party Complaint at 5. Matheis further asserts that the court lacks subject matter jurisdiction over this claim as it is not ripe for relief. Memorandum of Law in Support of Kevin Matheis' Motion to Dismiss the Third–Party Complaint (Doc. # 17), filed December 19, 1997 ("Memorandum of Law in Support of Motion to Dismiss the Third–Party Complaint"), at 8. Specifically, Plaintiff maintains that until Defendants/Third–Party Plaintiffs file an administrative claim for relief under the Tucker Act, 28 U.S.C. § 1491, in the Court of Federal Claims, there is no basis for their allegation of deprivation of a property interest without due process in violation of the Fifth Amendment. Memorandum of Law in Support of Motion to Dismiss the Third–Party Complaint at 7. Defendants/Third–

Party Plaintiffs argue in opposition that *Bivens* actions are outside the jurisdiction of the Court of Federal Claims, and, as such, the Tucker Act is not a source of due process for them. Memorandum of Law in Opposition to Motions to Strike and Dismiss at 25. Plaintiff, conceding that the Court of Federal Claims does not have jurisdiction over *Bivens* claims, replied that Defendants/Third–Party Plaintiffs have confused the issue as no *Bivens* action lies until Defendants/Third–Party Plaintiffs have sought, and been denied, recovery in the Court of Federal Claims. Reply Memorandum of Law in Support of Kevin Matheis' Motion to Dismiss the Third Party Complaint (Doc. # 24), filed February 2, 1998, at 3–4.

■ In *Williamson County Regional Planning Commission v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126, (1985), the Supreme Court held that where "the Government has provided an adequate basis for obtaining compensation, and if resort to that process '[yields] just compensation,' then the property owner has no claim against the Government' for a taking." *Williamson County, supra,* at 194, 105 S.Ct. 3108. Further, claims of unlawful takings by the Government are premature until the property owner has availed himself of the remedy afforded by the Tucker Act, 28 U.S.C. § 1491. *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1016, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984)(holding that relief is not available based on an alleged taking of private property for a public use, duly authorized by law, when a remedy is available under the Tucker Act against the sovereign subsequent to the taking).

The Tucker Act, 28 U.S.C. § 1491, provides in relevant part,

[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department or upon any express or implied contract with the United States, or for liquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a).

In the instant case it is undisputed that Defendants/Third–Party Plaintiffs never

availed themselves of the remedy available for unlawful takings afforded under the Tucker Act and which they now seek in the instant claim. Memorandum of Law in Support of Motion to Dismiss Counterclaim at 4; Memorandum of Law in Opposition to Motions to Strike and Dismiss at 25. As such, Defendants/Third–Party Plaintiffs have, at this time, no claim for an unlawful taking in violation of the Fifth Amendment's Due Process Clause.

Further, it is axiomatic that where a claim is not ripe, there is no case or controversy over which federal courts have any jurisdiction under U.S. Const. Art. III § 2, cl. 1, and Defendants/Third–Party Plaintiffs do not argue otherwise.

■ Plaintiff also asserts that insofar as Defendants/Third–Party Plaintiffs have not alleged a constitutional violation, they have alleged at most an action against Matheis sounding in tort under state law. Memorandum of Law in Support of Motion to Dismiss Counterclaim at 9–10. In that case, Defendants/Third–Party Plaintiffs' Fifth Amendment claim based on an unlawful taking fails for lack of jurisdiction as Defendants/Third–Party Plaintiffs have not presented any administrative claim to the appropriate agency, and received a final denial in writing as required under 28 U.S.C. § 2675(a). As failure to comply with the administrative scheme is jurisdictional and cannot be waived, *Keene, supra,* 700 F.2d at 840, Defendants/Third–Party Plaintiffs' claim must also be dismissed under Fed.R.Civ.P. 12(b)(1) for lack of jurisdiction.

■ Plaintiff alternatively argues even if Matheis engaged in some unlawful activity as OSC at the Polymer Site, Matheis is nevertheless immune from the instant action under the doctrine of qualified immunity. Qualified immunity shields government officials who perform discretionary functions from liability for civil damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 806, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Washington Square Post No. 1212 v. Maduro,* 907 F.2d 1288 (2d Cir.1990). Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective level of reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken. *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Lowth v. Town of Cheektowaga,* 82 F.3d 563, 568–69 (2d Cir.1996).

■ A right is clearly established if it (1) was defined with reasonable specificity, (2) its existence has been affirmed by either the Supreme Court or the relevant circuit court, and (3) a reasonable defendant official would have understood under the existing law that his acts were unlawful. *Brown v. City of Oneonta, N.Y. Police Dep't.,* 106 F.3d 1125, 1131 (2d Cir.1997). If it was objectively reasonable for the defendant to believe that his act did not violate the plaintiff's constitutional rights, the defendant may be entitled to qualified immunity. *Robison v. Via,* 821 F.2d 913, 920–21 (2d Cir.1987). A defendant is entitled to summary judgment based on qualified immunity "if the defendant adduce[s] sufficient facts [such] that no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs, could conclude that it was objectively unreasonable for the defendant to believe that he was acting in a fashion that did not clearly violate an established federally protected right." *Id.,* at 921 (internal quotation omitted). Stated another way, a defendant is entitled to qualified immunity under the objectively reasonable standard if "officers of reasonable competence could disagree" on the "legality of the defendant's actions." *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir. 1995). Further, provided that no factual issues are disputed, the application of qualified immunity to the facts is a question of law for the court to decide, *Finnegan v. Fountain,* 915 F.2d 817 (2d Cir.1990), and may be granted on a motion to dismiss under Fed. R.Civ.P. 12(b)(6). *Connell v. Signoracci,* 153 F.3d 74, 80, 1998 WL 518376 (2d Cir.1998)(citing *Behrens v. Pelletier,* 516 U.S. 299, 306, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996)).

In the instant case, a finding of qualified immunity turns on whether the actions taken by Matheis as OSC at the Polymer Site violated any of Defendants/Third–Party Plaintiffs' clearly established constitutional rights. That the EPA may be liable for an unlawful taking in violation of the Fifth Amendment had been clearly established prior to 1994, when the EPA commenced the pollution cleanup activities at the Polymer Site. *Ruckelshaus, supra,* at 1013, 104 S.Ct. 2862(finding, in the context of suit seeking injunctive relief permitting registration of pesticide, that EPA could be held liable for unlawful taking in violation of the Fifth Amendment).

Here, the court finds that except for their claim that Matheis violated Defendants/Third–Party Plaintiffs' rights under the Fifth Amendment based on an allegedly unlawful taking, which the court has found is an unripe claim, no other clearly established constitutional right has been asserted as violated. As such, the cross-claim should be dismissed for lack of jurisdiction and it is unnecessary to further address the merits of the qualified immunity defense.

Finally, Plaintiff asserts that there is no legal basis for Defendants/Third–Party Plaintiffs' request in their prayer for relief in the Third–Party claim that Matheis indemnify Green or Polymer for any civil penalties imposed against them under 42 U.S.C. § 9604(e)(5) for violating the EPA's Access Order.[9] Memorandum of Law in Support of Motion to Dismiss the Third–Party Complaint at 16. Defendants/Third–Party Plaintiffs have conceded that point, Memorandum of Law in Opposition to Motions to Strike and Dismiss at 26, and, as such, the court will not further address it.

Accordingly, Plaintiff's motion to dismiss the Third–Party Claim should be GRANTED.

## CONCLUSION

Based on the foregoing, Plaintiff's motion to strike the affirmative defenses (Doc. # 15), should be GRANTED in part and DENIED in part; Plaintiff's motion to dismiss the counterclaim (Doc. # 14) should be GRANTED; and Third–Party Defendant's motion to dismiss the Third–Party Complaint (Doc. # 16) should be GRANTED.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.* Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiffs and the Defendants.

SO ORDERED.

September 30, 1998.

---

9. Under 42 U.S.C. § 9604(e)(5), [t]he court may assess a "civil penalty not to exceed $25,000 for each day of noncompliance against any person who unreasonably fails to comply" with an access order issued by the EPA pursuant to § 104(e)(5) of CERCLA. 42 U.S.C. § 9604(e)(5).